[No. 9823-1-III. Division Three. February 1, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. JON HOWARD FARRER, *Appellant*.

*Lewis Schrawyer* and *Keyes & Schrawyer,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *D. Clinton Francis, Deputy,* for respondent.

GREEN, J.—On August 17, 1988, security officers Ron Bartos and James Lee were watching for theft activity at Tidyman's Warehouse Foods on Cedar Street in Spokane. They observed Jon Howard Farrer enter the store and a short time later saw him run out of the front of the store pushing a cart full of meat and other unbagged groceries. He and two accomplices began throwing the items into an automobile. When Messrs. Bartos and Lee approached, Mr. Farrer fled on foot. After a brief chase, he was apprehended and arrested. They recovered the stolen items and ran each item over the store computer scanner to determine their total value. Messrs. Bartos and Lee testified the value was $301.70. Mr. Farrer was charged with second degree theft, RCW 9A.56.040(1)(a), and convicted following a bench trial. This appeal followed. We affirm.

The sole issue is whether the court erred in admitting the testimony of the security officers as to the value of the items stolen. Mr. Farrer contends since their testimony was the only evidence of value, we should reverse his conviction because the security officers' only knowledge was from the price tags. Hence, he argues, their testimony should have been excluded as inadmissible hearsay under *State v. Coleman,* 19 Wn. App. 549, 576 P.2d 925 (1978). We disagree.

"A person is guilty of theft in the second degree if he commits theft of: (a) Property or services which exceed(s) two hundred and fifty dollars in value, but does not exceed one thousand five hundred dollars in value . . .". RCW 9A.56.040(1)(a). "Value" is the market value of the property at the time and in the approximate area where the act

was committed. RCW 9A.56.010(12)(a). "'"Market value" is . . . the price which a well–informed buyer would pay to a well–informed seller, where neither is obliged to enter into the transaction.'" *State v. Hancock,* 44 Wn. App. 297, 302, 721 P.2d 1006 (1986) (quoting *State v. Clark,* 13 Wn. App. 782, 787, 537 P.2d 820 (1975)); *see also State v. Rowley,* 74 Wn.2d 328, 334, 444 P.2d 695 (1968).

Mr. Bartos had firsthand knowledge of Tidyman's pricing procedures and knew the price tag reflected the amount customers must pay for the item. He testified that as part of his Tidyman's training, he learned the pricing procedures at the company's main plant in Coeur d'Alene, Idaho. There, meat items are placed on a computerized scale which produces the ticket indicating the "per pound" and "total" price of the item. The tags are placed on the meat and other merchandise and then shipped to the retail stores for sale. At the checkstand, the merchandise to be purchased by the customer is run over a computerized scanner that generates a total price and a daily business record based on the price tags. The price is not negotiable; the customer is expected to pay the amount printed on the tag. Mr. Bartos arrived at the value of the stolen items based on the price tags. He testified he

> [p]icked up each and every individual package of meat or items . . . wrote . . . down on a piece of paper . . . the value said on the ticket and then had [two] . . . employees . . . take it down and run it through the scanner system so we could get a readout list of exactly what [the] items were so . . . we could . . . match 'em all together and get an honest price . . . due to the fact that there was so many involved.

He stated none of the items were reduced for quick sale and, once recovered, were placed back on the shelf for sale at the originally marked prices which totaled $301.70. Mr. Bartos then explained the price tags for the meat items were unavailable because their removal from the package posed a health hazard should the meat be repackaged. On that basis, the court admitted the information from the price tags as evidence. We note the record reflects the value

of the meat items alone exceeded $250. An adequate foundation having been laid, the court properly admitted the testimony of Mr. Bartos.

Mr. Lee corroborated the testimony of Mr. Bartos. He described each stolen item, its tag price and stated the total was $301.70.

Mr. Farrer's reliance on *Coleman* is misplaced. There, no foundation had been laid for admission of price tags as evidence of value. The security guards could not testify that the price tags on the stolen items reflected the market value of the items. That is not the situation here. Mr. Bartos knew the pricing system at Tidyman's and that the price shown on each item was the market price, *i.e.*, the sales price. We find the other authorities cited by Mr. Farrer are also not applicable.

Affirmed.

MUNSON, C.J., and THOMPSON, J., concur.