[No. 32861-1-I. Division One. August 1, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. KATRINA LOUISE RAINWATER, *Appellant*.

*Jeanette Brinster* and *Todd De Groff* of *Northwest Defenders Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Tami Perdue, Deputy,* for respondent.

KENNEDY, J. — Katrina Rainwater appeals her conviction of first degree theft. Relying on *State v. Coleman,* 19 Wn. App. 549, 576 P.2d 925 (1978), Rainwater contends that the trial court erred when it permitted the State to establish the value of the stolen items by means of price tags, a list summarizing the information on the price tags, and the testimony of Lamonts' security guard, wherein he assigned a value to the stolen items based on the price tags, all of which Rainwater contends are hearsay.[1] We reject the reasoning of the *Coleman* majority and affirm Rainwater's conviction.[2]

---

[1]Rainwater also contends that the State failed to produce sufficient evidence of her complicity in the theft. She testified at the trial that she merely acted as a driver, without knowledge of her four friends' involvement in the theft. Upon reviewing the record we summarily affirm the trial court on this issue. There is substantial evidence and reasonable inferences therefrom from which a rational trier of fact could determine beyond a reasonable doubt that Rainwater stood ready to aid the criminal enterprise by moving the getaway car up to the front door of the store, so as to be there when her friends ran from the store. That Rainwater denied moving the car from its initial parking spot, and argues that it is reasonable to infer that she attempted to elude the security guard out of fear for her own safety, contradicts, but does not negate, the substantial evidence of Rainwater's guilt. Rainwater misunderstands the standard of review. The jury was the sole arbitrator of the credibility of the conflicting testimony of Ms. Rainwater and the store's security guard.

[2]This ruling moots Rainwater's final assignment of error, that there was insufficient evidence produced at the trial to support the trial court's restitution order.

## FACTS

On December 9, 1992, Katrina Rainwater accompanied four of her friends to the SeaTac Mall. Rainwater testified at the trial that she became tired and went back to the car to rest while her friends continued their shopping. Rainwater testified that the car was not parked in a handicapped parking spot and she denied having moved the car to a position in front of the doors to the Lamonts store at the mall.

Rainwater testified that, after about 15 minutes, her four friends and a Lamonts' security guard came running out of Lamonts and all jumped into the car. The security guard managed to reach over and take the keys out of the ignition. Rainwater claimed that she was not aware that her friends were taking clothes from Lamonts until after additional security guards arrived and removed all five women from the car.

Robert McBride, Lamonts' security guard, testified that he observed five women enter Lamonts, one of whom was Rainwater. McBride testified that he kept an eye on the women and moved close enough to overhear one woman ask another where a member of the group had gone. The second woman stated that the missing member had gone to get the car. McBride testified that he looked out into the parking lot and observed Rainwater behind the wheel of a car that had been backed into a handicapped parking spot near the entrance of the store. McBride testified that one of the women then left Lamonts and walked up to the car to talk to Rainwater. McBride testified that Rainwater then moved the car to a position in front of the door.

McBride testified that, after the woman returned to the store, another of the women yelled, "Let's go", and all four women then ran out of the store carrying armloads of merchandise. McBride followed and dived into the front seat of the car, just before the car took off. McBride testified that, after a scuffle, he managed to get control of the car and steer it into the loading dock area, where he turned off the ignition. During the scuffle, McBride was sprayed with mace or pepper spray. The stolen clothing was also thoroughly doused with the spray.

McBride was the only State's witness who testified about the value of the stolen merchandise. McBride testified that he brought the stolen clothing into a back room of the store for itemization, after the women were taken into custody. Following normal store procedure, and with the assistance of store management staff, an itemized list (called an "evidence label") was compiled. McBride testified that the value of the clothing, as determined by the inventory, was $2,042.47. This value was determined based on the price tags which were attached to the stolen garments.

At this point, Rainwater raised an objection, claiming that McBride was testifying about things that were beyond the scope of his personal knowledge, and that the State had not established an adequate foundation. The court overruled the objection. The State then moved to have the evidence label entered into evidence as exhibit 6. Rainwater raised a hearsay objection to the document, which was overruled.

The State also moved to have a box containing the actual stolen clothing entered into evidence as exhibit 5. Rainwater did not object to the admission of exhibit 5. The price tags were still on the stolen merchandise.

On cross examination McBride admitted that he was not involved in the pricing or sale of Lamonts' merchandise.

### DISCUSSION

Rainwater argues that the trial court erred in admitting State's exhibit 6, the evidence label, into evidence contending it is hearsay. We disagree.

Mr. McBride's testimony establishes that the evidence label was a record prepared in the normal course of business following the recovery of stolen merchandise by Lamonts. McBride followed normal store procedure by transferring inventory and pricing data from the tags on the garments into the evidence label. McBride prepared the evidence label at or near the time of the theft. Lamonts, in turn, relied on the evidence label for its own recordkeeping purposes. By use of the document, together with its normal inventory records, Lamonts could distinguish between goods sold and

goods stolen but recovered and placed into a police evidence locker.[3] The statutory requirements having been met, exhibit 6 was admissible as a business record.[4]

Recognizing that the prices shown on exhibit 6 are the same prices shown on the tags on the garments contained in exhibit 5, Rainwater next argues that the trial court erred in admitting the price tags on the merchandise as evidence of the value of the stolen goods, because the trial court was bound by this court's decision in *State v. Coleman, supra*. In *Coleman*, this court held that price tags, when not accompanied by foundational evidence, are not admissible as evidence of value under the business records exception to the hearsay rule.

Tags on retail clothing items typically include such identifying information as department, class and vendor codes, as well as size and price. The tags attached to the clothing found in State's exhibit 5 contain this kind of information. This is information the store uses to maintain its inventory records of items sold. Such tags are business records in every sense of the term. Ideally, the State would meet all the requirements of RCW 5.45.020 in presenting such evidence. However, here the State failed to offer such foundational evidence, as McBride was not qualified to testify as to Lamonts' pricing procedures. Compare *State v. Farrer*, 57 Wn. App. 207, 787 P.2d 935 (1990) (where summary of price tags was accompanied by testimony from store manager who was familiar with pricing and merchandising, summary was admissible to show value of stolen items).

---

[3]McBride testified that sometimes recovered merchandise can be returned to the floor for sale, but such was not the case here. This stolen merchandise was ruined by the mace or pepper spray which was used by one or more of the women during the struggle in the getaway car.

[4]RCW 5.45.020 provides:

"A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The State admits that the trial court was bound by *Coleman*, but urges this court to decline to follow the *Coleman* decision because it no longer reflects the reality of today's market — that the price listed on the price tag is an accurate reflection of the item's market value. The State points, instead, to the dissent in *Coleman*, 19 Wn. App. at 555 (Andersen, J., dissenting) ("In this day and age, items bought at retail are customarily purchased at the price shown on the price tags attached to the merchandise").

██ We agree with the dissent in *Coleman. See also State v. White*, 37 Conn. Supp. 796, 437 A.2d 145 (1981). As noted in *White*, at 801 n.2, price tags may be the best available evidence of the market value of the kind of retail merchandise which is typically sold for the price shown on such tags.[5] Contrary to the reasoning of the *Coleman* majority, and as stated in *White* (and as is implicit in the dissent to *Coleman*), we think trial courts can properly take judicial notice[6] of the fact that price tags on retail clothing generally reflect the market value of the clothing, since this fact is both commonly known and capable of ready demonstration. *White*, at 801. *See also Armstrong v. State*, 516 So. 2d 806, 809 (Ala. Crim. App. 1986) (price tag attached to an item of stolen property at time of theft is sufficient circumstantial evidence of value, where uncontradicted, to support a conviction grounded upon the marked price of the item's value); *State v. Love*, 147 Ariz. 567, 711 P.2d 1240 (1985) (rejecting *Coleman* in part; agreeing with *White* that retail value is at least substantial evidence of value, and that the price tags should be admitted on this basis). However, we hold that such price tags constitute substantial evidence of market value *only so long as* the case involves a retail store that is commonly known to sell its goods

---

[5]Value was defined for Rainwater's jury as "the market value of the property or services at the time and in the approximate area of the act." Clerk's Papers, at 22. This instruction was based on RCW 9A.56.010(12)(a) which provides: " 'Value' means the market value of the property or services at the time and in the approximate area of the criminal act."

[6]*See generally In re Marriage of Mahalingam*, 21 Wn. App. 228, 235 n.9, 584 P.2d 971 (1978) (the court is entitled to take judicial notice of facts commonly known) and cases cited therein.

for a nonnegotiable price as shown on the tag. That Lamonts is such a store is both commonly known and capable of ready demonstration.

■ We take note of Rainwater's argument that, on any given day, merchandise identical or virtually identical to that sold at Lamonts and stolen here may be available at a discount house or factory outlet store for a substantially lower price. Moreover, as concerned the *Coleman* majority, the jury had no way of knowing, in this case, whether or not the items stolen were due to go on sale or to a bargain basement or a discount house the following day or week. That concern and reasoning ignores the statutory definition of value, however. *See* RCW 9A.56.010(12)(a), which defines value as "market value". " 'Market value' is defined in this state as the price which a well-informed buyer would pay to a well-informed seller, where neither is obliged to enter into the transaction." *State v. Clark*, 13 Wn. App. 782, 787, 537 P.2d 820 (1975).

■ As Division Three of this court observed in the recent case of *State v. Kleist*, 74 Wn. App. 429, 431, 873 P.2d 587 (1994):

> The value of an item at a particular retail outlet includes, in addition to the intrinsic value of the item, certain intangibles related to the specific outlet where the item is sold, including the store's reputation, ambience, and the nature and extent of precautions taken against shoplifting. Because these intangibles vary, the price at which the same goods are sold at another store is not relevant so long as evidence is available to establish their price at the store from which they were stolen.

We agree. Moreover, we agree with Division Three that when items are stolen from a retail store, the price at which the items are sold *at that store* provides substantial evidence of their market value. *See State v. Farrer*, 57 Wn. App. at 210.[7]

---

[7]At oral argument Rainwater argued that automobiles, for example, are seldom sold for their sticker price. It does not follow from this argument that a court cannot and would not take judicial notice that merchandising practices relating to cars are different from merchandising practices relating to retail clothing, groceries, and similar consumer goods usually sold for a nonnegotiable, tagged price. The rule we adopt today will not apply to new and used automobiles or to other merchandise for which the "sticker price" is merely a clue to the probable range for

As for McBride's testimony that the value of the stolen goods was $2,042.47, we agree with Rainwater that this was not proper substantive evidence, but it is not error to ask such a witness to advise the jury of the sum of a column of figures — the jury can always check the math if there is any issue as to accuracy.

Finally, Rainwater argues that the use of price tags to establish the value of stolen merchandise violates the confrontation clause because there is no opportunity to cross-examine price tags, as one could a live witness. Rainwater points out that, through cross examination, it might be shown that the price on any given tag is a mistake.

We do not see this as a confrontation clause issue. *See Coleman*, 19 Wn. App. at 556 (Andersen, J., dissenting); *White*, at 801. Nor is the price tag *conclusive* evidence of value. *Coleman*, 19 Wn. App. at 555 (Andersen, J., dissenting). A defendant's discovery options are not limited by this opinion. Defendants are still free to investigate value and refute the State's evidence of value by any relevant evidence.

Affirmed.

PEKELIS, A.C.J., and BAKER, J., concur.

Reconsideration denied November 1, 1994.

Review denied at 127 Wn.2d 1010 (1995).

reasonable negotiations. Neither judges nor juries leave their common experience and common sense outside the courtroom door. Thus, we reject Rainwater's argument that the rule must be the same for retail clothing, groceries and automobiles.