[No. 61920-4.    En Banc.    May 18, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. SANDRA SUE
KLEIST, *Petitioner*.

*James J. Barlow*, for petitioner.

*James R. Sweetser, Prosecuting Attorney*, and *Kevin M. Korsmo* and *Andrew Metts*, for respondent.

DOLLIVER, J. — The present case concerns the type of evidence sufficient for and relevant to the valuation of stolen goods to establish degree of theft. Defendant Sandra Sue Kleist has admitted that on August 5, 1992, she took seven articles of clothing without paying from The Bon Marché in downtown Spokane, Washington. She now challenges her conviction for second degree theft.

A guilty verdict of second degree theft demands findings of fact both of a taking and of the value of the goods:

> A person is guilty of theft in the second degree if he or she commits theft of:
>
> (a) Property or services which exceed(s) two hundred and fifty dollars in value, but does not exceed one thousand five hundred dollars in value . . .[.]

RCW 9A.56.040(1)(a). Because Defendant stipulated to the taking, the only issue at trial concerned the degree of the

charge. The degree resulted from a valuation of the goods according to the price tags of the items, amounting to just over $250.

Defendant sought to introduce evidence at trial that the sale price of the same goods at a nearby Nordstrom amounted to less than $250, making the appropriate charge third degree theft. The trial court ruled that evidence of the regular retail prices charged by similar, nearby stores was admissible, but evidence of sale prices or prices from discount stores was inadmissible. At trial, the court specifically excluded testimony from a Nordstrom buyer regarding sale prices and pricing structures for the same items on the same day at the Spokane Nordstrom.

The trial court entered a judgment of guilty as charged on November 20, 1992, and sentenced Defendant to 10 days, with credit for 5 days' time served and 5 days converted to 40 hours' community service. The Court of Appeals affirmed the trial court's ruling and verdict. *State v. Kleist*, 74 Wn. App. 429, 873 P.2d 587 (1994). We reverse and remand to the trial court.

■ Defendant contests the State's valuation on two theories: the State's evidence was insufficient to prove value and the trial court erred by excluding evidence of Nordstrom sale prices. The Legislature has defined ''value'' for degrees of theft:

> ''Value'' means the market value of the property or services at the time and in the approximate area of the criminal act.

RCW 9A.56.010(12)(a). Criminal case law has derived a definition for market value from that developed in civil cases. *State v. Clark*, 13 Wn. App. 782, 787, 537 P.2d 820 (1975); *see State v. Rowley*, 74 Wn.2d 328, 334, 444 P.2d 695 (1968) (eminent domain); *McCurdy v. Union Pac. R.R.*, 68 Wn.2d 457, 467, 413 P.2d 617 (1966) (damages in negligence action); *Donaldson v. Greenwood*, 40 Wn.2d 238, 252, 242 P.2d 1038 (1952) (trust property).

"Market value" is defined in this state as the price which a well-informed buyer would pay to a well-informed seller, where neither is obliged to enter into the transaction.

*Clark*, 13 Wn. App. at 787; *see also State v. Farrer*, 57 Wn. App. 207, 209, 787 P.2d 935 (1990); *State v. Hancock*, 44 Wn. App. 297, 302, 721 P.2d 1006 (1986); *State v. Coleman*, 19 Wn. App. 549, 551, 576 P.2d 925 (1978). This case turns on the distinction between the sufficiency of the State's evidence to prove value and the admissibility of a defend-ant's evidence to rebut the State's valuation.

## I

### SUFFICIENCY OF EVIDENCE

Defendant challenges the sufficiency of the State's evidence on the basis of lack of foundation. Evidence is sufficient to support a criminal conviction if it would permit any rational trier of fact, viewing the evidence in the light most favorable to the State, to find the essential elements of the offense beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Defendant contends the State's only testimony on the issue of value, from the detaining security guard and The Bon Marché divisional sales manager, discussed The Bon Marché retail prices without establishing foundation to show value.

Defendant relies on *Coleman*, where the Court of Appeals decided the admission of price tags unaccompanied by foundation testimony from qualified witnesses was insufficient to support the value element of grand larceny. *Coleman*, 19 Wn. App. at 553-54. The State, however, urges us to follow Division One's more recent decision in *State v. Rainwater*, 75 Wn. App. 256, 876 P.2d 979 (1994), where the Court of Appeals adopted the *Coleman* dissent to hold price tags are subject to judicial notice "of the fact that price tags on retail clothing generally reflect the market value of the clothing, since this fact is both commonly known and capable of ready demonstration." *Rainwater*, at 261; *see Coleman*, 19 Wn. App. at 555 (Andersen, J., dissenting). The State thus argues foundation testimony was

unnecessary to establish market value from The Bon Marché price tags.

▮ Both *Coleman* and *Rainwater* are distinguishable from the present case. *Rainwater* cannot apply because judicial notice is inappropriate where the accuracy of the source is reasonably questioned. ER 201(b); *Tyler Pipe Indus., Inc. v. Department of Rev.*, 96 Wn.2d 785, 795-96, 638 P.2d 1213 (1982). In the present case Defendant disputed the accuracy of the tags as evidence of not only market value, but also retail price.

Thus, as in *Coleman*, admission of the price tags as evidence of value necessitated foundation testimony. Nonetheless, unlike *Rainwater* or *Coleman*, the State did offer adequate foundation testimony showing the tags accurately reflected The Bon Marché valuation of the goods: the security guard checked the tags against that day's computerized inventory records, and the sales manager testified as to the accuracy of this records system and that retail prices were non-negotiable. *See Farrer*, 57 Wn. App. at 209-10. In light of this foundation testimony, Defendant's challenge to the sufficiency of the evidence of value must fail.

## II

### ADMISSIBILITY OF SALE PRICES

▮ ▮ "Admission of evidence lies largely within the sound discretion of the trial court". *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 76, 684 P.2d 692 (1984). An abuse of discretion occurs only where "exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons." *Davis*, 102 Wn.2d at 77. We hold that, upon determining Nordstrom fell within the relevant market, the trial court abused its discretion by unreasonably excluding Nordstrom sales prices.

Although retail price alone may be sufficient to support a finding of value, the trial court properly agreed with Defendant that retail price is not absolute evidence of market value. *See Rainwater*, 75 Wn. App. at 262 (citing *Farrer*, 57 Wn. App. at 210). Rather than permit a theft victim to act

as the final arbiter of value, the trial court allowed Defendant some opportunity to show The Bon Marché retail prices did not accurately reflect market value. To limit the universe, however, the court defined the relevant market as "similarly situated" establishments, including Nordstrom. Verbatim Report of Proceedings, at 9.

At the same time, the trial court refused to admit evidence of sale prices at Nordstrom as irrelevant to the determination of value unless the victim's goods were also on sale. The trial court excluded such testimony on the basis that Nordstrom sale prices did not reflect The Bon Marché valuation of the goods:

> Basically, the question as I understand it or the issue the defendant is raising is: I ought to have the benefit of the sale price because that's what it was really worth in the market. I don't accept that at all. That's what it was worth to Nordstrom's but the property wasn't taken from Nordstrom's. The property was taken from the Bon Marche. The Bon Marche has indicated what it was worth to them and why it was worth to them and had some testimony discussing their pricing policy. . . .

Verbatim Report of Proceedings, at 102. The trial court pointed out Defendant received notice of the value of the goods from the price tags and made the choice to steal that value.

Agreeing with the sentiment that The Bon Marché could set its own value, the Court of Appeals appears to have gone even further than the trial court ruling to hold all evidence of prices from other stores, whether sale or regular price, irrelevant:

> The value of an item at a particular retail outlet includes, in addition to the intrinsic value of the item, certain intangibles related to the specific outlet where the item is sold, including the store's reputation, ambience, and the nature and extent of precautions taken against shoplifting. Because these intangibles vary, the price at which the same goods are sold at another store is not relevant so long as evidence is available to establish their price at the store from which they were stolen. . . .

*Kleist*, 74 Wn. App. at 431.

■■ The contention that all prices from other retailers are irrelevant directly conflicts with the language of the criminal statute. Despite the tempting simplicity of the theory that a thief should be bound by the victim's retail price, we cannot rewrite the statute. The Legislature has unambiguously declared value as market value. RCW 9A.56.010-(12)(a). An exception to this rule exists for only one category of goods, tickets, to be valued by retail price. RCW 9A.56.010(12)(b)(ii). Only by reading the statute to mean market value is broader than retail price do we assure this exception is not rendered superfluous. *See Stone v. Chelan Cy. Sheriff's Dep't*, 110 Wn.2d 806, 810, 756 P.2d 736 (1988).

The trial court further justified limiting valuation to retail prices by the so-called "restitution issue": The Bon Marché would expect to recover its retail price for a loss, not another store's sale price. Verbatim Report of Proceedings, at 103. The critical inquiry, however, is what a well-informed buyer and seller would pay for the goods. *State v. Clark*, 13 Wn. App. 782, 787, 537 P.2d 820 (1975). Market value is not based on "the value thereof to any particular person", but rather on an objective standard. *Clark*, 13 Wn. App. at 788 (quoting 52A C.J.S. *Larceny* § 118, at 618-19 (1968)). Restitution value as determined by The Bon Marché retail prices thus has no bearing on the exclusion of Nordstrom sale prices.

The trial court also analogized the exclusion of sale prices to its exclusion of wholesale and discount retailers. Such reasoning confuses market with valuation. The trial court defined the relevant market to include Nordstrom, and Defendant does not challenge on appeal the exclusion of wholesale and discount retailers from that market. Sale prices in a like establishment, however, constitute precisely the type of evidence by which to counter The Bon Marché valuation of the goods — perhaps The Bon Marché retail prices were inflated. As one court has described it:

> [R]etail price is simply an expectancy, an amount the owner hopes to receive for the item in the future. . . . [T]he profit

factor included in the prices can be arbitrarily inflated or deflated by the merchant, and therefore, not realistically represent a true value to the victim. . . .

*State v. Morgan*, 807 S.W.2d 209, 210 (Mo. Ct. App. 1991) (quoting *State v. Carter*, 544 S.W.2d 334, 338 (Mo. Ct. App. 1976)) (holding retail price is one, but not only, method to find value). Sale prices logically go to the issue of what a willing consumer would pay because sale prices may indicate that retail prices are higher than the market will bear.

We reject as well the State's contention that sale prices are properly excluded as "panic prices". This concept originated in dicta in *Donaldson v. Greenwood*, 40 Wn.2d 238, 242 P.2d 1038 (1952) where the Supreme Court rejected valuation of trust property on the basis of vague and inexpert evidence:

> "Fair market value" means neither a panic price, auction value, speculative value, nor a value fixed by depressed or inflated prices.

*Donaldson*, 40 Wn.2d at 252. Relying on *Donaldson*, the Court of Appeals in *State v. Hancock*, 44 Wn. App. 297, 721 P.2d 1006 (1986) upheld the exclusion of evidence that the defendant would have accepted a lower price for stolen goods from an apparently dangerous black marketeer; such evidence did not represent market value, but a panic price. *Hancock*, 44 Wn. App. at 304.

Unlike *Hancock*, no evidence in the present case suggests Nordstrom sale prices were panic prices. The *Hancock* court received evidence of a special motivation to sell below market value: a price induced by fear did not reflect that which a willing purchaser and seller would reasonably negotiate. *Hancock*, 44 Wn. App. at 304. Here, the trial court excluded not only Nordstrom sale prices, but also Defendant's proffer of evidence of Nordstrom pricing structure. The court thus lacked any means to determine whether the sale prices indeed constituted panic prices below market value or represented normal retail marketing strategy and a response to consumer demand.

Both the trial court and Court of Appeals have confused the issue of relevance with the issue of sufficiency. Just because The Bon Marché retail price is sufficient to prove value, that retail price is not necessarily the only relevant evidence to prove value. Indeed, the trial court's ruling excluding sale prices is directly at odds with its ruling allowing prices from a like retailer: both regular and sale prices represent types of retail prices.

We agree with the reasoning of another court regarding the scope of relevant evidence for valuation:

> A defendant is free to rebut a store price as representative of fair market value by showing that such retail or sale price was inflated by that store as evidenced by the price of the item at the same kind of stores in the general locale . . .. Likewise, the State may present evidence showing the price charged at other stores, and argue that the sale price was low and did not reflect fair market value in the county. . . .

*Keeton v. State*, 803 S.W.2d 304, 306 (Tex. Crim. App. 1991); *see also Donaldson*, 40 Wn.2d at 252. We recognize this procedure may require a slightly more elaborate evidentiary proceeding, but it is not for the court to judge the convenience of this process where the Legislature has spoken. Evidence of sale prices from a like retailer is a question of weight rather than relevance: only the trier of fact may weigh whether The Bon Marché regular retail prices or Nordstrom sale prices better reflect the market value of the goods.

JOHNSON, MADSEN, and ALEXANDER, JJ., and UTTER, J. Pro Tem., concur.

GUY, J. (concurring in part, dissenting in part) — As a comparison retail shopper, I look at price tags. I understand the amount charged for an item may differ from store to store or that the item may even be "on sale". When I wish to purchase a retail item, I further understand I must pay the amount listed on the price tag. If I am a shoplifter,

however, these rules mysteriously disappear. Remarkably, this court permits a shoplifter to find the lowest offered retail price for the merchandise stolen after his or her arrest. In my view, a thief, at a minimum, should comparison shop before, not after, he or she decides to steal. Where retail goods are offered at a fixed price, a thief should be bound by that price.

When Defendant Sandra Sue Kleist entered a Bon Marché in Spokane County on August 5, 1992, she was on notice through price tags the seven articles of clothing she attempted to steal had a combined value of $299. During trial, Ms. Kleist attempted to introduce testimony the seven articles of clothing stolen from The Bon Marché could be purchased "on sale" at Nordstrom for less than $250. The trial court excluded the proffered testimony. The Court of Appeals affirmed, holding:

> The value of an item at a particular retail outlet includes, in addition to the intrinsic value of the item, certain intangibles related to the specific outlet where the item is sold, including the store's reputation, ambience, and the nature and extent of precautions taken against shoplifting. Because these intangibles vary, *the price at which the same goods are sold at another store is not relevant so long as evidence is available to establish their price at the store from which they were stolen.*

(Italics mine.) *State v. Kleist*, 74 Wn. App. 429, 431, 873 P.2d 587 (1994); *State v. Rainwater*, 75 Wn. App. 256, 262, 876 P.2d 979 (1994).

The Legislature defined "value" for determining different degrees of theft as "the *market value* of the property or services at the time and in the *approximate area* of the criminal act." (Italics mine.) RCW 9A.56.010(12)(a). "Market value" was not defined by the Legislature, but it has been defined by Washington courts as "the price which a well-informed buyer would pay to a well-informed seller, where neither is obliged to enter into the transaction." *State v. Clark*, 13 Wn. App. 782, 787, 537 P.2d 820 (1975); *State v. Farrer*, 57 Wn. App. 207, 209, 787 P.2d 935 (1990). Neither

the Legislature nor this court has defined "approximate area".

I would hold for purposes of RCW 9A.56.010(12)(a), when merchandise is sold from a retail store where price tags establish the amount to be paid for the merchandise and the price is not negotiable, the "market value" of the merchandise is the dollar amount on the price tag. This rule recognizes elementary market economics that well-informed sellers routinely sell goods at retail to well-informed buyers. Here, The Bon Marché is a well-informed seller with many well-informed buyers.

The majority opinion creates more problems than it solves. Foremost, the majority ignores how its rule will be applied by the State against a criminal defendant. For example, assume converse facts: Ms. Kleist stole seven articles of clothing from Nordstrom with a combined value of $240. Under the majority's opinion, the State may pursue a felony charge based on testimony other stores, including The Bon Marché, sell the seven articles of clothing for a combined value of $299. The ability to increase charges based upon retail "values" produces uncertain and inconsistent results that unfairly prejudice a criminal defendant. The line between a gross misdemeanor and a felony should not be elastic.

A second problem with the majority opinion is that it defines "approximate area" too broadly. For example, does "approximate area" mean an adjoining store, a common mall, across the street, or within the city or county? To promote certainty and consistency, I would limit the "approximate area" to the relevant area — the retail store where the merchandise was stolen. When goods are not sold at retail, the "approximate area" is enlarged accordingly. *See State v. Hancock*, 44 Wn. App. 297, 721 P.2d 1006 (1986) (the cost of a case of cheese at the Tacoma docks is sufficient to establish the "market value" of 139 cases of cheese stolen from Mason County); *see also State v. Clark*, 13 Wn.

App. at 784 (valuing stolen steel); *State v. Duncan*, 148 Wash. 57, 268 P. 139 (1928) (valuing stolen chickens).

The "value" assigned to clothing by Nordstrom is not relevant to establish the "value" assigned to clothing by The Bon Marché. I would affirm the Court of Appeals.

DURHAM, C.J., and SMITH and TALMADGE, JJ., concur with GUY, J.