IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35231-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDON WILLIAM CATE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Brandon Cate appeals one of five convictions and the imposition of a sentence consecutive with a sentence imposed on the same day in an unrelated prosecution. Because the evidence did not support a value above $750 of the stolen property, we reduce his conviction for second degree theft to third degree theft. Because the sentencing court sentenced Cate on the same day as sentencing for convictions in an unrelated prosecution, we hold that the trial court committed error by entering consecutive sentences without declaring an exceptional sentence. We thus remand for resentencing.

FACTS

This prosecution arises from burglaries two days apart in Omak. The first burglary occurred at the residence of Kevin Bowling. The second burglary occurred at the business of Omak Marine.

On January 7, 2017, Omak Police Department Officer Shane Schaefer responded to a burglary complaint at the residence of Kevin Bowling. Bowling led Officer Schaefer to a tool shed on Bowling's property. A window on the side of the shed was shattered, and tools were missing from of the shed. Tools missing included a Stihl MS170 chainsaw, a Dremel max saw, a 12-amp skill saw, a cordless DeWalt drill with charger, a Senco pneumatic nail gun, a Craftsman corded hammer drill, a Drive brand compressed air impact tool, a Craftsman reciprocating saw, a Husky three-inch cutoff tool, a battery charger, and a small sander. Kevin Bowling estimated $1,700 as the value of the stolen tools.

On January 9, 2017, two days later, Officer Shane Schaefer responded to a burglary complaint at Omak Marine. Frank Lay, owner of the business, informed Schaefer that Lay observed footprints in the snow within the fenced perimeter of his business. Gas caps were disengaged from the tanks of ATV's at the business. Lay showed Officer Schaefer surveillance video of an individual jumping over the business' security fence, siphoning gas from vehicles inside the fenced area, and depositing the gasoline into two jugs.

Brandon Cate's former girlfriend, Malynda Fry, implicated Cate in the two Omak burglaries. Fry informed law enforcement that she saw Cate around January 7 towing a wagon full of tools and a chainsaw. Fry also mentioned that Cate commented about getting gasoline.

Omak law enforcement subsequently arrested Brandon Cate on an unrelated warrant. Omak Officer Brian Bowling, Kevin Bowling's son, saw at the time of Cate's arrest, a gas can in front of Cate's residence. The can looked like the gas can in the surveillance video from Omak Marine.

After escorting Brandon Cate to the police station, Omak police officers read Cate his *Miranda* rights and questioned him. Cate admitted to taking tools from Kevin Bowling's shed and to his involvement in the Omak Marine burglary. Cate identified himself as the individual in the Omak Marine surveillance video. He disclosed that he needed gasoline to deliver a bathtub to Tonasket. Cate also admitted to other burglaries.

PROCEDURE

The State of Washington prosecuted Brandon Cate for the January 7 and January 9 burglaries in the same proceeding. The State charged Brandon Cate with one count of second degree burglary, one count of second degree theft, and one count of third degree malicious mischief arising from the burglary at Kevin Bowling's tool shed. The State charging information for second degree theft read:

On or about January 7th 2017, in the County of Okanogan, State of Washington, the above-named Defendant did wrongfully obtain or exert unauthorized control over property, other than a firearm, as defined in RCW 9.41.010, or services of another, to-wit: Stihl MS170 Chainsaw, Dremel Max Saw, 12 Amp Skill Saw, Portable Dewalt Drill with charger, Senco Nail gun, Craftsman Corded Hammer Drill, Drive brand compressed air impact tool, of a combined value exceeding $750 but less than $5,000, with intent to deprive such other of such property or services.

Clerk's Papers (CP) at 190. The State of Washington charged Brandon Cate with one count of second degree burglary and one count of third degree theft arising from the Omak Marine property entry. In all, the State charged Cate with two counts of second degree burglary, one count of second degree theft, one court of third degree theft, and one count of third degree malicious mischief, a total of five crimes.

Brandon Cate completed an indigency screening form. The trial court determined he qualified for a public defender at no expense.

During testimony at the jury trial, Kevin Bowling identified and described the tools taken from his shed. Bowling stated that he still possessed the receipt for the Stihl chainsaw. During testimony, Bowling noted that most of the tools were newer, but some were older. He claimed to take good care of his tools.

During trial, Kevin Bowling assessed the total value of replacing the tools at $1,149.24. He explained that he estimated the value by researching the cost of replacement tools from online sources such as Home Depot and Sears. His valuation included the purchase price of the Stihl chain saw of $242.00. Bowling declared:

Q  Okay.  All right.  And then you calculated the total value of—of those items as—$1,149.24?
A  Yes.
Q  Okay.  And so—so that was based on the original receipt for the—the chain saw, plus the other items that you—
A  (Inaudible) values.
Q  Okay.
And that—that replacement value—now I noticed in that—that document, some of those items were—were listed on sale, or retail.  Did you use the sale price, or the retail price—
A  Just (inaudible).

Report of Proceedings (RP) at 202-03.

Without any objection from Brandon Cate, the trial court admitted as Exhibit 3 the restitution form completed by Bowling for the prosecution.  The exhibit listed the stolen tools with a value established by Bowling.  The form listed the objects purloined as a Craftsman reciprocating saw, a pneumatic nail gun, a DeWalt cordless drill, a Craftsman half-inch hammer drill, a Husky three-inch cutoff tool, an impact tool, a battery charger, a corded Dremel tool, a Dremel cutting tool, a Stihl chainsaw, and a small sander.

Exhibit 3 includes a receipt for $242.80 from Covey's in Omak, on March 29, 2011.  Nevertheless, the Stihl chainsaw represented only $179.95 of this price.  The remaining cost included $12.59 and $12.95 for miscellaneous items, $19.95 for "1 case," and $17.36 for tax.  Ex. 3.  A certificate for a warranty on the saw accompanied the receipt and the two were part of Ex. 3.

Officer Shane Schaefer testified at trial that the value of the missing tools from Kevin Bowling's shed to be "somewhere near $1,700."  RP at 174.  He based his estimate

5

on the restitution packet admitted as Ex. 3.

The to-convict jury instruction given for second degree theft at Kevin Bowling's shed informed the jury that it must find beyond reasonable doubt that Brandon Cate wrongfully obtained tools belonging to Kevin Bowling, the property exceeded $750 in value, Cate intended to deprive Bowling of the property, and the act occurred in Washington State. The trial court also instructed the jury on the lesser included offense of third degree theft in relation to this charge. On April 12, 2017, the jury convicted Brandon Cate on all five counts charged.

The trial court scheduled sentencing for April 19, 2017, at the same time as the previously scheduled sentencing date for convictions entered in Okanogan Superior Court cause no. 17-1-00039-4, a prosecution unrelated to the current case. The coincidental sentencing of two cases complicated matters. For purposes of clarity, we refer to this case on appeal as the "present prosecution" and case no. 17-1-00039-4 as the "unrelated prosecution." The incidents attended to the charges in the unrelated prosecution were separate in time by four weeks from the thefts at Kevin Bowling's shed and Omak Marine's property.

In the unrelated prosecution, Brandon Cate sustained convictions for burglary in the second degree, malicious mischief in the second degree, and theft in the second degree. Brandon Cate, in the unrelated prosecution, garnered an offender score of seven, and he faced a standard range sentence for second degree burglary, the operative

6

conviction, of 33 to 43 months. According to the State, the offender score did not include convictions in the present case, and the score assumed that Cate would receive a consecutive sentence for the convictions in the present prosecution. The State sought a mid-range sentence of 38 months for second degree burglary with any sentence for the other two convictions in the unrelated prosecution running concurrently to the 38 month sentence for burglary. The other two convictions called for shorter sentences.

Brandon Cate disagreed with imposing consecutive sentences with regard to the sentences in the two distinct prosecutions, and he asked the sentencing court to run the sentence in the present prosecution concurrently with the sentence in the unrelated prosecution. Thus, Cate sought a concurrent sentence for all nine convictions in the two prosecutions. Cate noted that he simultaneously confessed to the crimes in each prosecution. Cate, however, agreed that, if the sentencing court imposed consecutive sentences, the court should not include convictions in the unrelated prosecution in the offender score for the present prosecution and presumably vice versa.

For the present prosecution, Brandon Cate bore an offender score of eight and a standard range sentence of 43 to 57 months for each of the burglary counts. The State sought a mid-range sentence of 50 months for each burglary conviction with the two sentences to run concurrently. The State also asked that the sentences for the other three convictions in the present prosecution run concurrently to the 50 months. The State, however, asked that the sentence in the present prosecution run consecutively to the

sentence meted in the unrelated prosecution.

The sentencing court commented that it held discretion to impose consecutive or concurrent sentences with regard to the sentences in the present prosecution and the unrelated prosecution. The court decided to impose consecutive sentences, because concurrent sentences would execute no punishment for the crimes committed in the present prosecution. Nevertheless, the sentencing court's conclusion concerning a lack of punishment does not take into consideration the potential addition of the convictions in the unrelated prosecution to the offender score in the present prosecution. After determining to assess consecutive sentences, the sentencing court imposed a 38 month sentence for the unrelated prosecution to run consecutively with the 50 month sentence for the present prosecution. On the judgment and sentence entered for this case, the sentencing court checked none of the boxes for an exceptional sentence. Nothing in the judgment and sentence purports to issue an exceptional sentence.

The trial court found Brandon Cate to be indigent and thus imposed only the then mandatory legal financial obligations totaling $800. The trial court also entered an order of restitution in an amount to which Cate agreed.

## LAW AND ANALYSIS

On appeal, Brandon Cate challenges only one conviction, the conviction for second degree theft arising from his taking tools from Kevin Bowling's shed. Nevertheless, he also challenges the sentencing court's running of his sentence in the

present prosecution consecutively with the sentence in the unrelated prosecution. We address each challenge in such order.

Second Degree Theft

Brandon Cate first contends that insufficient evidence supports his conviction for second degree theft arising from the tools stolen from Kevin Bowling's shed. He argues that the evidence did not support a finding by the jury that the property stolen possessed a market value exceeding $750. Cate emphasizes that the State relied on the purchase price of the chain saw and the replacement cost of other tools rather than the chattels' current market value. According to Cate, the purchase price and replacement cost do not reflect depreciation of the tools' values based on their use and age. Although Bowling testified that he cared for his tools, he did not testify to the current condition of each tool or the age of each stolen tool, other than the chain saw being six years old.

The State responds that the prosecution may rely on the sale price or advertised price of tools when establishing market value. The State emphasizes the good care provided by Kevin Bowling for his tools. According to the State, no evidence directly indicated that the tools suffered significant reduction in value after their respective purchases. The State also highlights that the receipt for the chain saw did not evidence the cost of a replacement saw since Bowling purchased the saw at a pawn shop and thus the price reflected a used saw. The value of the chain saw would only need to be $24 or more in order for the objects stolen to hold a combined value of more than $750.

9

Before moving to the law, we address facts regarding the Stihl chain saw. The State contends that Kevin Bowling purchased a used chain saw at a pawn shop. The receipt admitted as part of exhibit 3 evidences a purchase of a MS170 Stihl chain saw at Covey's in Omak. Nothing on the receipt identifies Covey's as a pawn shop. A Stihl product registration card for warranty service accompanies the receipt. Both documents suggest Covey's to be an authorized dealer of Stihl products, not a pawn shop. Nothing on the receipt suggests that Bowling purchased a used saw. We question whether Bowling would have received a product registration card for warranty service if Bowling purchased a used saw. The State presented no trial testimony of a purchase of a used chain saw from a pawn shop.

A criminal defendant may always challenge the sufficiency of the evidence supporting a conviction for the first time on appeal. *State v. Sweany*, 162 Wn. App. 223, 228, 256 P.3d 1230 (2011), *aff'd*, 174 Wn.2d 909, 281 P.3d 305 (2012). Sufficient means more than a mere scintilla of evidence; there must be a quantum of evidence necessary to establish circumstances from which the jury could reasonably infer the fact to be proved. *State v. Fateley*, 18 Wn. App. 99, 102, 566 P.2d 959 (1977). The proper inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.

*State v. Salinas*, 119 Wn.2d at 201.  A claim of insufficiency admits the truth of the

State's evidence and all inferences that reasonably can be drawn therefrom.  *State v.*

*Salinas*, 119 Wn.2d at 201.

To find Brandon Cate guilty of second degree theft, the jury had to find that he

wrongfully obtained tools exceeding $750 in value.  RCW 9A.56.040(1)(a).  For

purposes of second degree theft, Washington law defines value as "the market value of

the property or services at the time and in the approximate area of the criminal act."

RCW 9A.56.010(21)(a).  Market value means the price which a well-informed buyer

would pay to a well-informed seller, when neither is obligated to enter the sales

transaction.  *State v. Longshore*, 141 Wn.2d 414, 429, 5 P.3d 1256 (2000).  In a

prosecution, value need not be proven by direct evidence.  *State v. Hermann*, 138 Wn.

App. 596, 602, 158 P.3d 96 (2007).  Rather, the jury may draw reasonable inferences

from the evidence, including changes in the condition of the property that affect its value.

*State v. Melrose*, 2 Wn. App. 824, 831, 470 P.2d 552 (1970).  Although evidence of the

price paid for an item is entitled to great weight, such evidence must not be too remote in

time.  *State v. Ehrhardt*, 167 Wn. App. 934, 944, 276 P.3d 332 (2012).  An important rule

for purposes of this appeal is that evidence other than market value, such as replacement

cost, is inadmissible unless the State first shows that the property has no market value.

*State v. Ehrhardt*, 167 Wn. App. at 944-45; *State v. Clark*, 13 Wn. App. 782, 788, 537

P.2d 820 (1975).

The State relies on *State v. Kleist*, 126 Wn.2d 432, 440, 895 P.2d 398 (1995) for the proposition that the State may establish the market value of a stolen object by an advertised price or sale price. In *Kleist*, Sandra Kleist admitted lifting seven articles of clothing from the Bon Marché, but she disputed the goods' value. The State charged Kleist with second degree theft that then constituted the taking of goods valued between $250 and $500. The degree of the theft charge resulted from a valuation of the clothes according to the price tag of the items, amounting to just over $250. A Bon Marché security guard testified to checking the tags against that day's computerized inventory records, and the store's sales manager testified as to the accuracy of the records system and that retail prices were nonnegotiable. Kleist sought to introduce evidence that the sale price of the same goods at a nearby Nordstrom store amounted to less than $250, but the trial court excluded the evidence.

Before our high court, Sandra Kleist first contested the sufficiency of the evidence based solely on Bon Marché employee testimony as to the price tag. According to Kleist, a price tag only establishes one retailer's sales price, but does not constitute the fair market value. After an interesting philosophical discussion of market value, the Supreme Court disagreed because Bon Marché's employees provided a foundation for the price tag being a possible market value. The Supreme Court nonetheless reversed the conviction and remanded for a new trial because of the exclusion of evidence of prices at Nordstrom.

*State v. Kleist* holds limited relevance to Brandon Cate's appeal. Cate did not steal new tools from a store. He purloined used tools from an individual. Because Sandra Kleist stole unused merchandise from a store, the value of goods taken necessarily depended on the goods' retail price. In trying to apply *Kleist* to this case, the State erroneously equates retail prices and replacement costs.

We agree with Brandon Cate that the State presented insufficient evidence to convict of theft of goods exceeding the value of $750. The State presented no testimony that the tools lacked a market value such as to permit use of replacement cost evidence. Although Kevin Bowling testified to taking good care of the tools, he did not testify to the respective items' age, purchase price, or current condition. The State argues that the value of the chain saw would only need to be at least $24 in order for the objects stolen to hold a combined value of $750 or more and that the saw obviously had a value of at least $24. This argument relies on the assumption that all other stolen tools held the same value as their respective replacement cost. As indicated, we disagree with this assumption.

In reaching our conclusion we rely on *State v. Ehrhardt*, 167 Wn. App. 934 (2012), and *State v. Morley*, 119 Wn. App. 939, 83 P.3d 1023 (2004), which we find more comparable than *State v. Kleist*. In *State v. Ehrhardt*, the State charged Joseph Ehrhardt with second degree theft of two rotary hammers, a pressure washer, a box of stereo wiring, an air compressor, and two nail guns from a shed on Brian Glaze's

13

property. Glaze, who had four years of experience working in construction, testified he bought the air compressor for $100 five or six years before trial, but he never used it and its condition remained brand new. He testified that he purchased the pressure washer for $199 within the last year and that he acquired the items in the stereo wiring box for over $200 or $300 throughout the years, but the items were "'just bits and parts and pieces,'" and were now worth $100. *State v. Ehrhardt*, 167 Wn. App. at 938. For the rotary hammers, Glaze testified they belonged to his employer, that they cost about $450, and that they were about three years old. He testified that the nail guns also belonged to his employer, they cost in the $230 range each, and each gun was three years old.

On appeal, Joseph Ehrhardt contended that the evidence was insufficient to convict him of second degree theft because the State failed to prove that the items over which Ehrhardt exerted unauthorized control held a value of more than $750. This court agreed that Brian Glaze's testimony as to the value of the items was not sufficient because Glaze testified only as to their cost, not their worth in their used condition. The State presented no direct evidence and insufficient circumstantial evidence of the condition or depreciation of the tools from which the jury could infer their market value. Nor did the State present evidence that the tools had no market value, which would have permitted the State to rely on evidence of their replacement cost. Notably, in *State v. Ehrhardt*, the State elicited more evidence regarding the condition of the property, the date of purchase, and the purchase price than the State provided in Brandon Cates' trial.

14

In *State v. Morley*, 119 Wn. App. 939 (2004), employees witnessed a man steal a

generator from a Spokane business. The next day, employees watched as a man again

rolled another generator onto his vehicle. This time, however, the assistant manager

confronted the man, who entered his truck and drove away. The second generator was

recovered. The State charged Shannon Morley with second degree theft for taking the

first generator and attempted first degree theft for moving the second generator.

During trial, in *State v. Morley*, assistant store manager Chaus Fleury testified that

the first generator's book value was $665.92, which reflected its depreciated value. The

State asked Fleury about the second generator: "'What was the list price in market value,

if you were to buy it new on that day?'" *State v. Morley*, 119 Wn. App. at 942. Fleury

responded "'$2,000.00.'" *State v. Morley*, 119 Wn. App. at 942. On cross examination,

Fleury was asked: "'So you don't have a . . . market value on that . . . generator?'" *State

v. Morley*, 119 Wn. App. at 942 (alterations in original). He stated: "'With our

depreciation factored in, I do not. We have a discount . . . I could figure out for you if

you want that. That is the closest thing I would be able to come to, our cost type of thing,

what it would cost [RentX] to replace that generator.'" *State v. Morley*, 119 Wn. App. at

942 (alterations in original).

In *State v. Morley*, the trial court found the market value of the generator to be

$2,000 and convicted Shannon Morley of attempted first degree theft of the second

generator. The issue on appeal was whether the evidence of the used generator's retail

price as new sufficed to support the value element of Morley's conviction for attempted first degree theft. This court held the evidence was insufficient and reversed the conviction. This court reasoned that the generator's retail value did not evidence its fair market value when the owner used the generator and did not offer it for resale.

In this appeal, Kevin Bowling did not testify as to the condition of each of the tools when stolen. Bowling did not testify as to the ages of the various tools. He averred that most of the tools were newer, but some were older. We do not know which tools were older and which tools were newer and how new the newer tools were. For all but one tool, the State presented only the replacement cost of the items, not the items' market value.

We reverse the conviction for second degree theft and remand to the trial court for entry of judgment on a conviction for the lesser included crime of third degree theft, since the trial court instructed the jury on the lesser crime.

Brandon Cate also contends that his trial counsel engaged in ineffective assistance of counsel when failing to object to exhibit 3 as hearsay. The exhibit, prepared by victim Kevin Bowling, listed the stolen items and a value for each tool. Since we reduce Cate's conviction to third degree theft and he does not argue that the State presented insufficient evidence for this degree of theft, we need not address this additional contention.

Brandon Cate further contends that the State convicted him of tools never listed in the charging information as the subject of the charges of theft. Since the value of those

16

items listed in the information would support a conviction for third degree theft, we need

not address this contention either.

### Consecutive Sentences

Because we reduce the conviction for second degree theft to third degree theft, the

sentencing court will need to resentence Brandon Cate. Nevertheless, Cate also attacks

the original sentence's running consecutively to the sentence in the unrelated prosecution,

Okanogan County Superior Court cause no. 17-1-00039-4, the subject of the same

sentencing hearing. Because the sentencing court imposed the sentences in the two

prosecutions on the same date, Cate contends the offenses in both prosecutions are

current offenses which should have been sentenced concurrently unless the court had

authority to impose and in fact imposed an exceptional sentence.

In response, the State supports consecutive sentencing by contending the two

offenses are not current offenses. As such, the State argues the sentencing court held

authority to impose consecutive sentences without a finding under the aggravating factors

statute and without declaring an exceptional sentence.

The second sentence of RCW 9.94A.525(1), a critical slice of the sentencing

reform act, provides:

> Convictions entered or sentenced on the same date as the conviction for which the offender score is being computed shall be deemed "other current offenses" within the meaning of RCW 9.94A.589.

RCW 9.94A.589(1) addresses "current offenses" and declares in relevant part:

17

. . . Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535.

An exceptional sentence requires the sentencing court to list reasons for its decision in written findings of fact and conclusions of law. RCW 9.94A.535. The sentencing court on its own may find aggravating factors leading to an exceptional sentence. RCW 9.94A.535(2). Other aggravating factors must be found by a jury, unless the defendant waives the jury. RCW 9.94A.535(3). Those circumstances under which the trial court may on its own find aggravating circumstances for purposes of an exceptional sentence are:

> (2) Aggravating Circumstances—Considered and Imposed by the Court
> The trial court may impose an aggravated exceptional sentence without a finding of fact by a jury under the following circumstances:
> (a) The defendant and the state both stipulate that justice is best served by the imposition of an exceptional sentence outside the standard range, and the court finds the exceptional sentence to be consistent with and in furtherance of the interests of justice and the purposes of the sentencing reform act.
> (b) The defendant's prior unscored misdemeanor or prior unscored foreign criminal history results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010.
> (c) The defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished.
> (d) The failure to consider the defendant's prior criminal history which was omitted from the offender score calculation pursuant to RCW 9.94A.525 results in a presumptive sentence that is clearly too lenient.

RCW 9.94A.535(2).

18

Brandon Cate's sentencing court did not impose an exceptional sentence. Therefore, the juxtaposition of RCW 9.94A.589(1) with RCW 9.94A.525(1) requires us to resolve whether the convictions imposed in the present prosecution constitute current offenses with the convictions imposed in the unrelated prosecution because sentencing occurred on the same date.

The State underscores that the crimes in the unrelated prosecution occurred weeks apart from the crimes in the present prosecution, that the State charged the respective crimes in different cause numbers, and that different juries convicted Brandon Cate in the two prosecutions. According to the State, the trial court sentenced the two prosecutions on the same day for convenience, not because the two prosecutions entailed current offenses. Impliedly the State contends that Brandon Cate should not benefit by a sentencing process that, according to the State, convenienced him.

The State's contention holds appeal. Nevertheless, we must follow the words enacted by the state legislature in RCW 9.94A.525(1). If the statute's meaning is plain on its face, we usually give effect to that plain meaning as an expression of legislative intent. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). The statute demands the courts to deem all offenses "sentenced on the same date" to be current offenses. The legislature could have written, but did not write, that only offenses within the same court filing shall be deemed current offenses. The language admits no exceptions for offenses in separate prosecutions if sentenced on the same day. Because the sentencing court

19

entered sentences for both the present prosecution and the unrelated prosecution on the same date, the court could not impose any consecutive sentences without declaring an exceptional sentence and entering appropriate findings of fact.

In support of its contention that the convictions in the two prosecutions do not qualify as current offenses, the State relies on *In re Personal Restraint of Finstad*, 177 Wn.2d 501, 301 P.3d 450 (2013). Lowell Finstad faced seven felony charges in four separate prosecutions. After the jury convicted Finstad on two of the charges in one prosecution, he and the State negotiated a global plea agreement on the remaining charges. Under the agreement, most of the sentences would run concurrently. Nevertheless, the State would ask the court to run a sentence for delivery of a controlled substance conviction consecutively to the others. The court accepted the State's sentencing recommendation and ran the sentence for delivery consecutively with other sentences without making any special findings for an exceptional sentence.

Three years later Lowell Finstad filed a personal restraint petition and challenged his consecutive sentence on the basis that he received an exceptional sentence that did not comply with RCW 9.94A.589 and RCW 9.94A.537. The Supreme Court denied Finstad relief. The court noted that the sentence failed to comply with the statutory demands. Nevertheless, Finstad failed to show actual and substantial prejudice by constitutional error or that his trial suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. Therefore, Finstad did not carry

20

his burden to obtain relief by personal restraint petition.

We do not deem *Personal Restraint of Finstad* controlling because Brandon Cate's cause comes to us on direct appeal. Cate need not show a constitutional error or substantial prejudice. Generally, all erroneous sentences may be challenged on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).

The State does not address what remedy we should impose if we determine the sentencing court committed error in entering the consecutive sentences. Brandon Cate requests that we remand for the sentencing court to enter concurrent sentences in the present prosecution and the unrelated prosecution. We decline this request. The sentencing court should be able to conduct a new sentencing hearing based on directions from this court.

We remand to the trial court to engage in resentencing at a combined resentencing hearing with the unrelated prosecution. We note that at resentencing both parties may present new evidence concerning Brandon Cate's past criminal convictions. RCW 9.94A.530. The Washington Supreme Court has yet to permit new evidence with regard to other factors when the defense objects to new evidence. *State v. Cobos*, 182 Wn.2d 12, 15, 338 P.3d 283 (2014). We further note that consecutive sentencing requires a finding of aggravating circumstances under RCW 9.94A.535. Some aggravating circumstances require a jury finding.

Legal Financial Obligations

Brandon Cate also requests that we vacate the imposition of the $200 criminal filing fee and the $100 DNA collection fee. Pursuant to *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), the statutory amendments of House Bill 1783 apply to this case since Cate's case is still pending on direct review and not yet final. Those amendments no longer permit imposition of the two fees on an indigent defendant. We direct that, on remand, the sentencing court vacate the two financial obligations.

CONCLUSION

We vacate Brandon Cate's conviction for second degree theft and direct the trial court to enter a conviction of guilt on third degree theft. We remand for resentencing based on the reduction in the conviction and for the trial court to reassess whether to impose a consecutive sentence or a concurrent sentence with the sentence imposed in the unrelated prosecution, Okanogan County Superior Court cause no. 17-1-00039-4. Sentencing in both cases shall proceed at the same time. We also direct vacation of the $200 criminal filing fee and $100 DNA collection fee.

No. 35231-5-III
*State v. Cate*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.