158 P.3d 96 (2007)
STATE of Washington, Respondent,
v.
Nathan W. HERMANN, Appellant.
No. 34161-1-II.
Court of Appeals of Washington, Division 2.
May 15, 2007.
*97 Thomas Edward Doyle, Attorney at Law, Hansville, WA, Patricia Anne Pethick, Attorney at Law, Tacoma, WA, for Appellant.
Monty Dale Cobb, Mason County Prosecutors Office, Shelton, WA, for Respondent.
*98 HOUGHTON, C.J.
¶ 1 Nathan Hermann appeals his convictions of first degree theft and trafficking in stolen property, arguing that insufficient evidence supported the verdict, his counsel provided ineffective assistance, and the trial court commented on the evidence when it instructed the jury. He also argues that the trial court violated Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), when it added one point to his offender score without a jury finding that he was on community placement at the time of the crimes. We agree that instructing the jury that evidence of retail price paid could be sufficient evidence of value constituted a prejudicial comment on the evidence. We affirm the trafficking in stolen property conviction and the trial court's offender score calculation. We reverse the first degree theft conviction and remand for further proceedings.

FACTS
¶ 2 Joann Hermann, the defendant's adoptive mother, owned a large jewelry collection. She kept a box containing 12 rings on the dresser behind the VCR in her bedroom. Joann[1] also stored two other rings in the dresser drawer.
¶ 3 In January 2005, Hermann helped Joann replace her VCR with a new one that she had received for Christmas. To do so they removed all the drawers from the dresser.
¶ 4 Around the end of the month, Joann discovered that the box of rings was missing. She searched the house and all the cupboards. When she could not find the rings, she asked Hermann and his girl friend, Kristie Southerland, whether they had seen the jewelry box. They denied seeing it.
¶ 5 Around this time, Hermann lived with Southerland. After the conversation with Joann, Southerland discovered in Hermann's possessions several pawn slips for rings. Southerland gave the pawn slips to Joann.
¶ 6 Joann reported the theft to the police. When he learned this, Hermann asked her if she would drop the charges if he got the rings back. He also asked her if she had found one of the rings that she kept in the drawer. Joann was not aware that ring was missing, but when she checked the drawer it was gone. Hermann went into the bathroom and came out with the missing jewelry box. He told Joann he was just borrowing the rings and admitted he had pawned them on two occasions.
¶ 7 Detective Harry Heldreth of the Shelton Police Department placed a hold on the rings that Hermann pawned in Lacey. He also obtained pawn slips from a shop in Shelton confirming that Hermann had pawned rings there on January 13 and February 11.
¶ 8 On May 26, Heldreth interviewed Hermann at the police station. After waiving his Miranda rights, Hermann admitted that he had pawned Joann's rings at two different pawn shops. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The police arrested Hermann. Authorities later recovered eight rings from a Lacey pawn shop.
¶ 9 The State charged Hermann with first degree theft and two counts of first degree trafficking in stolen property. A jury heard the matter and when it could not reach a verdict, the trial court declared a mistrial.
¶ 10 At the second jury trial, a certified diamond grader appraised the eight recovered rings at slightly over $900, based on the value of the gold and diamonds. The appraiser did not take into account the value of any colored stones. Joann also submitted sales receipts for many of the rings, including some of the rings that were not recovered. The receipts for the rings placed their purchase price at over $4,000.
¶ 11 The State proffered an original jury instruction stating that evidence of retail price may be sufficient to establish value. Hermann objected, arguing that the instruction was not included in the pattern jury instructions and improperly commented on the evidence. The trial court gave the instruction, finding that it was accurate and well founded in case law.
*99 ¶ 12 The jury convicted Hermann on all three charges. In calculating his offender score, the trial court added a point because he was on community placement at the time of the crime. Based on an offender score of 8, the trial court sentenced Hermann to 65 months in prison. He appeals.

ANALYSIS

SUFFICIENCY OF THE EVIDENCE
¶ 13 Hermann first argues that insufficient evidence supported the convictions. We disagree.
¶ 14 The standard for determining sufficiency of the evidence on appeal is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). In challenging the sufficiency of the evidence, the appellant admits the truth of the State's evidence and all inferences that can reasonably be drawn from it. State v. McNeal, 145 Wash.2d 352, 360, 37 P.3d 280 (2002). Circumstantial and direct evidence have equal weight. State v. Varga, 151 Wash.2d 179, 201, 86 P.3d 139 (2004). The State bears the burden of proving all the elements of the crime charged beyond a reasonable doubt. State v. Teal, 152 Wash.2d 333, 337, 96 P.3d 974 (2004); State v. McCullum, 98 Wash.2d 484, 489, 656 P.2d 1064 (1983).

A. First Degree Theft
¶ 15 Hermann contends that the sales receipts for the rings did not prove that the value of the rings exceeded $1,500 because the purchases were too remote, having occurred over a 20 year period.
¶ 16 To prove first degree theft, the State must present evidence that the defendant stole property exceeding $1,500 in value. RCW 9A.56.030(1)(a). "Value" refers to the market value of the property at the time and in the general area of the crime. RCW 9A.56.010(18)(a). Market value is an objective standard and consists of the price a well-informed buyer would pay to a well-informed seller. State v. Kleist, 126 Wash.2d 432, 435, 895 P.2d 398 (1995); State v. Shaw, 120 Wash.App. 847, 850, 86 P.3d 823 (2004).
¶ 17 In determining the value of an item, evidence of price paid is entitled to great weight. State v. Melrose, 2 Wash.App. 824, 831, 470 P.2d 552 (1970). The jury can consider changes in the property's condition that would affect its market value. Melrose, 2 Wash.App. at 831, 470 P.2d 552. Value need not be proven by direct evidence as the jury may draw reasonable inferences from the evidence. Melrose, 2 Wash.App. at 831, 470 P.2d 552.
¶ 18 Here, the evidence was sufficient to place the value of the stolen rings in excess of $1,500. Joann's receipts showed that she paid at least three times that amount when she purchased the rings. One of the unrecovered rings came with a lifetime guarantee for its full value of $1,110.34. The recovered rings were worth at least $915 because of the value of the gold and diamonds, without considering the value of the colored stones. Considering only the wholesale value of the gold and diamonds in the recovered rings, together with the guaranteed value of the unrecovered ring, the State presented sufficient evidence from which the jury could reasonably infer that the value of the stolen jewelry exceeded $1,500.
¶ 19 Moreover, Hermann misplaces reliance on State v. Morley, 119 Wash.App. 939, 83 P.3d 1023 (2004). In Morley, Division Three held that evidence of retail value was insufficient to prove market value under the facts of that case. 119 Wash.App. at 943, 83 P.3d 1023. But that case involved a used generator, which was purchased at less than retail price and depreciated in value. Morley, 119 Wash.App. at 943, 83 P.3d 1023. Here, Joann purchased the rings at retail prices and they retained their wholesale value as gold and gemstones. Under these facts, Morley does not apply.
¶ 20 Because the State presented sufficient evidence for the jury to conclude that the value of the stolen rings exceeded $1,500, Hermann's first argument fails.

*100 B. Trafficking in Stolen Property
¶ 21 In his statement of additional grounds, Hermann contends that because the pawn slips state that the transaction was a loan rather than a sale, the evidence insufficiently proved that he trafficked in stolen property.
¶ 22 A defendant "who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property, is guilty of trafficking in stolen property in the first degree." RCW 9A.82.050(1). "Traffic" is defined as "to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person." RCW 9A.82.010(19).
¶ 23 Contrary to Hermann's contention, sale or transfer of ownership is not the exclusive means of committing trafficking in stolen property. Evidence that a defendant knowingly pawns stolen goods is sufficient to support a charge of trafficking in stolen property. See generally State v. Michielli, 132 Wash.2d 229, 235, 937 P.2d 587 (1997).
¶ 24 Furthermore, the trafficking statute encompasses the transfer of possession of a stolen good, not merely the transfer of ownership. It is well established that a thief does not take title to stolen property. See State v. Mermis, 105 Wash.App. 738, 748, 20 P.3d 1044 (2001) (citing RCW 10.79.050). Therefore, a thief cannot transfer valid title to stolen property. Mermis, 105 Wash.App. at 748, 20 P.3d 1044. Reading the trafficking statute to prohibit only the transfer of title in stolen property would render the statute a nullity. Instead, the legislature clearly intended to prohibit any commercial transaction involving property known to be stolen.
¶ 25 The evidence is undisputed that Hermann took his mother's rings without her permission and used them as collateral to obtain loans from pawn shops. He thereby transferred possession of the rings to the pawn shop without having any right to do so. A reasonable jury could conclude beyond a reasonable doubt that Hermann knew the rings were stolen when he pawned them. The evidence sufficiently supported the trafficking conviction. Hermann's argument fails.

INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 26 Hermann next argues, pro se, that his conviction should be reversed due to the ineffective assistance of his trial counsel. He contends that his attorney's performance was deficient by conceding his guilt on the theft charge. Because the trafficking conviction depended on proof that Hermann knew the jewelry was stolen, Hermann asserts that conceding he committed the theft was unreasonable.
¶ 27 To establish ineffective assistance of counsel, the defendant must show that the attorney's performance was both deficient and prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We accord deference to counsel's performance in order to "eliminate the distorting effects of hindsight" and, therefore, we presume reasonable performance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052; State v. Lopez, 107 Wash.App. 270, 275, 27 P.3d 237 (2001), aff'd, 147 Wash.2d 515, 55 P.3d 609 (2002). A decision concerning trial strategy or tactics will not establish deficient performance. State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996); State v. Garrett, 124 Wash.2d 504, 520, 881 P.2d 185 (1994).
¶ 28 Conceding guilt to the jury can be a sound trial tactic when the evidence of guilt overwhelms. State v. Silva, 106 Wash. App. 586, 596, 24 P.3d 477 (2001). Such an approach may help the defendant gain credibility with the jury when a more serious charge is at stake. Silva, 106 Wash.App. at 599, 24 P.3d 477. If the concession is a matter of trial strategy or tactics, it does not constitute deficient performance. See State v. Cienfuegos, 144 Wash.2d 222, 227, 25 P.3d 1011 (2001).
¶ 29 Here, the evidence that Hermann committed the theft was overwhelming. Hermann admitted pawning the rings and asked his mother to drop the charges if he recovered them. He told his mother he was only borrowing them. He also gave her back the jewelry box and pointed out another *101 missing ring that she had not realized was gone. The State introduced pawn slips from two different shops where Hermann pawned the rings. Last, Joann testified that she never gave Hermann permission to pawn her rings. The conclusion that he stole his mother's jewelry was inescapable.
¶ 30 In light of this overwhelming evidence, counsel noted in closing argument that "inasmuch an admission that a theft took place[,] I don't think there'sthere's any way around that. II think it's there." XVIII Report of Proceedings (RP) at 291. Counsel then proceeded to argue to the jury why second degree theft was a more appropriate charge than first degree theft. Counsel also argued that Hermann did not commit trafficking because he intended to recover the rings.
¶ 31 Under these circumstances, the decision to admit that Hermann probably committed the theft is a matter of trial strategy, not deficient performance. Accordingly, counsel's performance was not unreasonable. Thus, we do not address the prejudice prong.

JURY INSTRUCTION
¶ 32 Next, Hermann argues that instruction 21 constituted a prejudicial comment on the evidence that relieved the State of its burden of proving every element of the crime. We agree.
¶ 33 A jury instruction can constitute a comment on the evidence if it reveals the court's attitude toward the merits of the case, or the court's evaluation of a disputed issue. State v. Lane, 125 Wash.2d 825, 838, 889 P.2d 929 (1995). Judicial commentary on the evidence is prohibited in order to prevent the court's opinion from influencing the jury. Lane, 125 Wash.2d at 838, 889 P.2d 929. Accordingly, if the defendant establishes a comment on the evidence, it is the State's burden to prove that the defendant was not prejudiced by the comment. Lane, 125 Wash.2d at 838-39, 889 P.2d 929.
¶ 34 Here, the trial court instructed the jury in instruction 21: "Evidence of a retail price may be sufficient to establish value." XVII RP at 274. The instruction was apparently based on decisions in State v. Clark, 13 Wash.App. 782, 788, 537 P.2d 820 (1975) ("[I]t has been held that evidence of the purchase price, selling price, and the condition of the property when stolen is admissible, especially when the property has been used but a short while."), and Melrose, 2 Wash.App. at 831, 470 P.2d 552 ("Admissible evidence of price paid is entitled to great weight."). But those cases do not support the giving of instruction 21.
¶ 35 In Melrose, the court held evidence that a camera was purchased for $320 five years earlier sufficient to prove that its value exceeded $75. That case did not involve a challenge to jury instructions, but rather it considered whether the evidence of price paid was admissible and sufficient to prove market value.
¶ 36 And in Clark, the court upheld an instruction that allowed the jury to consider the purpose for which the owner intended the property in computing its value. 13 Wash.App. at 788-89, 537 P.2d 820. The instruction was appropriate in that case because the parties presented the jury with two different market values for stolen steel pieces, depending on whether they were considered to be scrap metal. Clark, 13 Wash. App. at 788, 537 P.2d 820. But the instruction did not inform the jury whether any particular evidence would be sufficient to establish value.
¶ 37 In our view, neither Melrose nor Clark supports giving instruction 21. By instructing the jury that evidence of retail price could be sufficient to establish the value of the stolen jewelry, the trial court improperly directed the jury to give greater weight to that evidence than the evidence of wholesale value. "Because the jury is the sole judge of the weight of the testimony, a trial court violates this prohibition when it instructs the jury as to the weight that should be given certain evidence." In re Detention of R.W., 98 Wash.App. 140, 144, 988 P.2d 1034 (1999). Instruction 21 improperly invaded the province of the jury by effectively directing it to calculate the jewelry's value based on the purchase price, to the exclusion of other competent evidence of value.
*102 ¶ 38 Moreover, the State has not shown the error was harmless. Because the evidence that the jewelry was worth at least $1,500 was not overwhelming, it is likely that instruction 21 influenced the jury's verdict. The conviction of first degree theft must be reversed and the matter remanded for further proceedings.

COMMUNITY PLACEMENT
¶ 39 Last, Hermann argues that the trial court violated Blakely by finding he was on community placement at the time of the crime and adding a point to his offender score. We review the calculation of an offender score de novo. State v. Tili, 148 Wash.2d 350, 358, 60 P.3d 1192 (2003). Commission of a crime while on community placement causes a point to be added to the offender score. Former RCW 9.94A.525(17) (2004).
¶ 40 The United States Supreme Court held in Blakely that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury," except for the fact of a prior conviction. 542 U.S. at 301, 124 S.Ct. 2531. After the parties in this case submitted their briefs, our Supreme Court decided State v. Jones, 159 Wash.2d 231, 149 P.3d 636 (2006). In Jones, the Court held that
because community custody is directly related to and follows from the fact of a prior conviction and that the attendant factual determinations involve nothing more than a review of the nature of the defendant's criminal history and the defendant's offender characteristics, such a determination is properly made by the sentencing judge.
159 Wash.2d at 234, 149 P.3d 636. The Jones decision holds that a judge may find whether a defendant is on community placement for purposes of calculating the standard sentencing range. 159 Wash.2d at 247, 149 P.3d 636.
¶ 41 Accordingly, Blakely does not prohibit the trial court from determining whether Hermann was on community placement at the time he committed the acts charged.[2] The trial court did not err in calculating Hermann's offender score.
¶ 42 We affirm the trafficking in stolen property conviction and the trial court's offender score calculation. We reverse the first degree theft conviction and remand for further proceedings.
We concur: QUINN-BRINTNALL and VAN DEREN, JJ.
NOTES
[1] We refer to Joann Hermann by her first name for clarity.
[2] The jury convicted Hermann of committing trafficking on January 13, 2005, and February 11, 2005, as charged in the information. Jones therefore controls because the trial court needed only to look to his prior sentence to determine whether Hermann was on community placement on those days. Because we reverse the first degree theft conviction, we do not consider whether Jones controls when the information charges a continuing offense.