# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47713-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CHRISTOPHER C. KENDRICK, | |
| Appellant. | |

BJORGEN, C.J. — A jury returned a verdict finding Christopher C. Kendrick guilty of second degree assault. Kendrick appeals his conviction, asserting that (1) the State failed to present sufficient evidence to support the conviction and (2) his defense counsel was ineffective for conceding his guilt on a lesser included charge of third degree assault. We affirm.

## FACTS

Kendrick and Sara Biggs were in a dating relationship and lived together in Tacoma with Biggs' three children. On the evening of January 2, 2015, Biggs went to a friend's house with her children while Kendrick was at work. While at her friend's house, Biggs drank several shots

of whiskey and became intoxicated. Kendrick came home from work later that evening and, when he saw that no one was at home, suspected that Biggs went to her friend's house. Kendrick walked to the friend's house at around midnight. When he saw that Biggs was intoxicated, Kendrick became upset and tried to convince her to let him bring her children back home. After arguing with Biggs and her friends for 15 to 30 minutes, Kendrick and Biggs walked home with the children.

After arriving at their home, Kendrick and Biggs again began arguing. Kendrick stated that he wanted to leave the house and tried to grab some keys. Biggs remembered fighting over the keys and that Kendrick was on top of her with his hands around her neck, but stated she "blacked out" and did not remember anything else that happened until she woke up at around four in the morning. Report of Proceedings (RP) at 42-43. When she woke up, Biggs saw that she had several bruises on her throat, face, arms, and legs. She also saw that her eyes were red and that a hole in the wall was bigger than it had been the previous night.

Biggs reported the incident to police, and Kendrick was arrested at the Lakewood restaurant where he worked. Kendrick agreed to speak with police after being advised of his *Miranda*[1] rights. Tacoma Police Officer Joshua Boyd asked Kendrick whether he had thrown Biggs around the bedroom. Kendrick answered, "It is possible. I am not admitting anything." RP at 98. Kendrick gave the same response when asked whether he had pushed Biggs' head through a bedroom wall and whether he had choked her. The State charged Kendrick with second degree assault by strangulation or suffocation.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Biggs testified at trial that she had told Boyd that Kendrick caused her injuries, but that she could not remember telling Boyd about any other details of the incident. Boyd testified that Biggs had told him Kendrick threw her across the room several times and choked her about four times, causing her to lose consciousness. Photographs of Biggs' injuries taken a few days after the incident were admitted as evidence. The photographs show numerous bruises on Biggs' arms, legs, chest, and neck, as well as hemorrhaging in her eyes. Kendrick testified that he had caused Biggs' injuries depicted in the photographs, but he denied strangling her.

At the conclusion of the evidentiary phase of trial, defense counsel requested the trial court to instruct the jury on the lesser-included offense of third degree assault.[2] The trial court granted the request over the State's objection. During closing argument, defense counsel stated:

> Now, could Mr. Kendrick have handled things a bit differently? Of course he could have. . . . I would submit to you, ladies and gentlemen, the most the State has proven with [Biggs'] testimony, and just the two of them were there at the time, with the injuries that were photographed and have healed, apparently, and then with her inconsistencies, I submit the State has not proven anything but Assault Third Degree. He could have handled differently and negligently, which is defined in your instructions, that is what happened, is Assault in the Third Degree.
> . . . .
> There was an altercation. Certainly it was not handled properly. Certainly there was bruising. I can't say there wasn't.
> Ladies and gentlemen, all the State has proven is Assault Third Degree.

RP at 158-60.

The jury returned a verdict finding Kendrick guilty of second degree assault. The jury also returned a special verdict finding that Kendrick and Biggs were members of the same family or household. Kendrick appeals his conviction.

---

[2] Defense counsel also requested the trial court to instruct the jury on fourth degree assault but later withdrew this request.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Kendrick first contends that the State failed to present sufficient evidence in support of his second degree assault conviction. Specifically, Kendrick argues that the State failed to present evidence that he strangled Biggs. We disagree.

Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in a light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When reviewing the sufficiency of the State's evidence, we consider circumstantial evidence and direct evidence as equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting witness testimony, witness credibility, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992), *abrogated on other grounds by In re Pers. Restraint of Cross*, 180 Wn.2d 664, 327 P.3d 660 (2014).

To convict Kendrick of second degree assault as charged, the State had to prove beyond a reasonable doubt that he (1) assaulted Biggs (2) by strangulation or suffocation. RCW 9A.36.021(1)(g). Kendrick challenges only the sufficiency of evidence supporting the second element. RCW 9A.04.110(26) defines strangulation as "to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe." Criminal intent "'may be inferred if the

4

defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.'" *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013) (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)).

The State presented sufficient evidence from which any reasonable jury could find that Kendrick strangled Biggs. Biggs testified that she remembered Kendrick being on top of her with his hands around her neck. Although Biggs testified that she could not remember whether this conduct hurt her or whether she had any difficulty breathing as a result of Kendrick having his hands around her neck, Boyd testified that Biggs had previously told him Kendrick "choked her . . . about four times, to the point where she lost consciousness." RP at 94-95. The jury was also presented with photographic evidence showing bruising on Biggs' neck, which Kendrick admitted causing. This was sufficient evidence from which any reasonable jury could infer that Kendrick compressed Biggs' neck and either actually obstructed her ability to breathe or acted with the intent to obstruct her ability to breathe.

Kendrick appears to argue that the jury could not rely on Boyd's testimony to support the finding that he strangled Biggs because Biggs' mother told Biggs what to write in her statement for police. Biggs' testimony on the role of her mother is imprecise at best. Her testimony could suggest either that Biggs' mother told her what to write or that her mother spoke to Boyd for her. In any event, this testimony was all before the jury, and Boyd testified that Biggs had voluntarily made these statements herself and that she did not appear to be under the influence of any medications when doing so. It was solely within the jury's province to determine the credibility of Boyd's and Biggs' conflicting testimony on this point and, thus, Kendrick's argument fails.

5

*Walton*, 64 Wn. App. at 415-16. Accordingly, we hold that sufficient evidence supports Kendrick's conviction of second degree assault by strangulation.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Kendrick contends that his defense counsel was ineffective for conceding his guilt on the lesser included charge of third degree assault. Again, we disagree.

We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on his claim of ineffective assistance of counsel, Kendrick must show both (1) that his counsel's representation was deficient and (2) that the deficient representation prejudiced him. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). Conduct constituting a legitimate trial strategy cannot support an ineffective assistance of counsel claim. *Grier*, 171 Wn.2d at 33. We presume that counsel's performance was not deficient. *Grier*, 171 Wn.2d at 33. To overcome this presumption, Kendrick "bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 42 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

We have previously held that defense counsel's concession of guilt to a lesser crime may be a sound trial tactic where the evidence of such guilt is overwhelming. *State v. Hermann*, 138 Wn. App. 596, 605, 158 P.3d 96 (2007). There we reasoned that "[s]uch an approach may help the defendant gain credibility with the jury when a more serious charge is at stake." *Hermann*, 138 Wn. App. at 605. Those circumstances are present here.

As instructed, the jury could find Kendrick guilty of third degree assault if it found that he (1) negligently (2) caused bodily harm to Biggs, and (3) the bodily harm was accompanied by

No. 47713-1-II

substantial pain that extended for a period sufficient to cause considerable suffering. RCW 9A.36.031(1)(f). The evidence at trial supporting these elements was overwhelming. Photographic evidence admitted at trial showed numerous injuries to Biggs' legs, arms, chest, neck and eyes. Kendrick admitted to causing all of these injuries. Additionally, trial testimony established that the photographs of Biggs' visible injuries were taken at the hospital three days after the incident, and Biggs testified that she had "pain shooting through [her] body" while at the hospital, which required her to take "a whole bunch of medicine." RP at 52. In light of this overwhelming evidence that Kendrick committed third degree assault, defense counsel's concession of guilt to that offense was a legitimate tactic to seek acquittal on the greater offense of second degree assault. Because defense counsel's concession was a legitimate tactic, it cannot support Kendrick's ineffective assistance of counsel claim. Accordingly, we affirm Kendrick's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, C.J.

We concur:

JOHANSON, J.

MAXA, J.

7

No. 47713-1-II