# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51346-3-II |
| Respondent, | |
| v. | |
| LARRIN JOSEPH BREITSPRECHER, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Larrin J. Breitsprecher appeals his convictions for third degree possession of stolen property, commercial fishing using unlawful fishing gear, and first degree unlawful interference with fishing gear.  Breitsprecher argues that (1) there is insufficient evidence to support these convictions, (2) the trial court erred by failing to give an accomplice liability instruction for the commercial fishing using unlawful fishing gear and the first degree unlawful interference with fishing gear charges, and (3) the trial court erred by denying his motion to dismiss and motion to arrest judgment.  We affirm.

## FACTS

### I. BACKGROUND

The State of Washington through the Department of Fish and Wildlife regulates the commercial crabbing industry in Washington.[1]  RCW 77.04.012.  A commercial crabber must label their crab pots and buoys to identify the owner.  RCW 77.15.520.  When the commercial

---

[1] Title 77 RCW—Fish and Wildlife Code of the State of Washington.

crabbing season is closed, Fish and Wildlife issues permits to retrieve derelict crabbing gear from the ocean. RCW 77.70.500. The person with the permit making the recovery can possess and own a recovered crab pot. RCW 77.70.500(4)(b).

Breitsprecher was the captain, owner, and operator of a commercial fishing vessel, the Shearwater II, which he operated offshore of Westport, Washington. Kory Kerzman, a former crewmember of the Shearwater II, met with Fish and Wildlife agents and told them that Breitsprecher taught him how to steal other people's commercial crab pots and ordered him to steal a number of commercial crab pots during the 2016 commercial crabbing season.

Breitsprecher stored his pots and gear at the Westport gear yard at the Port of Grays Harbor. After an investigation, Fish and Wildlife agents obtained and executed a search warrant for the Shearwater II and Breitsprecher's gear pile at the Westport gear yard. The search warrant authorized Fish and Wildlife agents to search for and seize from the Shearwater II and Breitsprecher's gear pile any stolen crab pots, along with the vessel's global positioning system (GPS), chart plotter, and a red grinder that was used to grind off identification markings on crab pots. Kerzman helped Fish and Wildlife agents by identifying which pots, pot tags, and buoys in Breitsprecher's gear pile were stolen. Pursuant to the warrant, Fish and Wildlife agents seized 32 crab pots from Breitsprecher's gear pile identified by Kerzman as having been stolen during the 2016 commercial crab season. Agents also seized the GPS, chart plotter, and red grinder from the Shearwater II.

II. CHARGES AND TRIAL

The State charged Breitsprecher with second degree theft, second degree possession of stolen property, commercial fishing using unlawful gear, and first degree unlawful interference with fishing gear.

At trial, the primary factual disputes were whether Kerzman had, at Breitsprecher's direction, pulled commercial crab pots and buoys aboard the Shearwater II that belonged to other commercial fishermen, and whether those pots and buoys remained part of Breitsprecher's commercial fishing gear. The primary legal issues were whether the crab pots without an identifying buoy in the ocean were abandoned property, and whether the original owner still had a possessory interest in those pots.

Kerzman testified that when he worked for Breitsprecher, he was instructed to pull up commercial crab pots that belonged to other commercial fisherpersons who owned and operated crab boats offshore of Westport during the 2016 commercial crab season. Kerzman testified that during the 2016 commercial crab season, he pulled anywhere from two to twenty crab pots that did not belong to Breitsprecher each time they took the Shearwater II out. Kerzman testified that he was instructed to pull up buoys attached to the pots that were different colors than the orange and red buoys Breitsprecher owned. Sometimes the crew pulled up additional pots in a single pull because the lines were tangled in a "wrap-around."[2] Verbatim Report of Proceedings (VRP) (Oct.

---

[2] A "wrap-around" occurs when the line attached to one crab pot that is sitting in the water gets tangled with another line attached to a different crab pot that is also sitting in the water. Verbatim Report of Proceedings (Oct. 17, 2017) at 55-56. A "wrap-around" becomes problematic when one pulls up their own crab pot and, in doing so, also pulls up someone else's crab pot due to the tangled lines.

18, 2017) at 220. Kerzman and the other crew members knew when to pull pots that did not belong to Breitsprecher because Breitsprecher would, "rev [the boat's] motor" as a sign to grab the buoy and pull the attached pot. VRP (Oct. 18, 2017) at 291.

After a crab pot that did not belong to Breitsprecher was brought on board, Kerzman inspected the crab pot to determine, "How easy it would be to make it ours." VRP (Oct. 18, 2017) at 224. If Kerzman determined that the pot was worth keeping, he would then manipulate the pot to make it look like Breitsprecher's other pots. Kerzman and other crew members would strip the pot and buoy to make it look like Breitsprecher's property by removing the buoy tags, changing the lines and bait containers, and at times, using a red grinder to grind down the weight bars on the pots to remove the name of the proper crab pot owner. Sometimes, Kerzman would put the buoys into the pots and sink the whole bundle. Kerzman further testified that Breitsprecher taught him these practices and that Breitsprecher knew what he [Kerzman] was doing.

Kenneth Rausch, the operations manager for the Port of Grays Harbor at Westport, and Cole Miller, one of Breitsprecher's former employees, testified as to the layout and accessibility of the stacks of crab pots at the Westport gear yard and that the stacks of crab pots searched by Fish and Wildlife agents belonged to Breitsprecher. Rausch testified that the gear yard was fenced, but accessible at all hours. He also testified that either fish processing companies or individual fishermen, including Breitsprecher, rented space to store crabbing gear.

The State sought to admit at trial five of the thirty-two pots seized by Fish and Wildlife agents. The trial court admitted all five crab pots and they bore either Shearwater II pot tags or buoys. Christine Winn, owner of the fishing vessel Qualaysquallum, described how commercial fisherpersons recognize their fishing gear, even without crab pot tags and buoys, by using unique

4

identifiers that are personal to the owner. Winn identified one of the five pots as hers because she had a "Q" welded on the pot's weight bars. VRP (Oct. 18, 2017) at 318.

Pete Wilson, owner of the fishing vessel Johnny B, testified that he was able to recognize his crab pots without identifying tags or buoys:

> [W]hen you have so many of these and this is what you've done and you put them all together the exact same way, you know when they're yours. It's like you just know. I mean I have a white Ford F-350, but if there were five of them in the parking lot I would know which one is mine.

VRP (Oct. 18, 2017) at 345. He also identified one of the five crab pots as his and noted that the weight bar had a section that had been "ground smooth and it's not wearing the same as the rest of this weight bar, because my initials have been ground off." VRP (Oct. 18, 2017) at 349-50.

Matthew Winsberg, owner of three commercial crabbing vessels, testified that he immediately identified six crab pots in the Fish and Wildlife evidence yard as his. At trial, Winsberg identified two of the five crab pots as his. He further noted that both pots had Breitsprecher's Shearwater II buoy attached.

Rex Rhoades, owner of the fishing vessel Lady Michelle, testified that he identified four crab pots at the Fish and Wildlife evidence yard as his. At trial, he identified one of the five crab pots as his. Rhoades testified that his pot bore the pot tag of the Shearwater II.

Breitsprecher filed a motion to dismiss arguing there was insufficient evidence to show that the crab pots were taken because they could be considered abandoned. The trial court denied this motion.

The trial court then instructed the jury as follows. To prove third degree possession of stolen property, the State had to prove beyond a reasonable doubt that Breitsprecher knowingly

received, retained, possessed, concealed, or disposed of stolen property; Breitsprecher acted with knowledge that the property had been stolen; Breitsprecher withheld or appropriated the property to the use of someone other than the true owner or person entitled thereto; and these acts occurred in Washington. The trial court's instruction on constructive possession and dominion and control stated:

> Possession means having the property in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the property.
>
> Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.
>
> In deciding whether [Breitsprecher] had dominion and control over the property, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether [Breitsprecher] had the immediate ability to take actual possession of the property, whether the defendant had the capacity to exclude others from possession of the property, and whether [Breitsprecher] had dominion and control over the premises where the property was located. No single one of these factors necessarily controls your decision.

Clerk's Papers (CP) at 52.

The court also instructed the jury that a person's use, control, or operation of any crab pot bearing a tag identifying the pot as belonging to another person was illegal subject to certain exemptions. CP at 52.

To prove the charge of commercial fishing using unlawful fishing gear, the State had to prove beyond a reasonable doubt that (1) Breitsprecher acted for commercial purposes, (2) Breitsprecher took or fished for any fish or shellfish using any gear in violation of a rule of the Washington State Fish and Wildlife Commission specifying, regulating, or limiting the gear for

6

taking, fishing, or harvesting of such fish or shellfish, and (3) the acts occurred in Washington. The trial court instructed the jury that

> [a] person "acts for commercial purposes" if the person engages in conduct that relates to commerce in fish, seaweed, shellfish, or wildlife or any parts thereof. Commercial conduct may include taking, delivering, selling, buying, or trading fish, seaweed, shellfish, or wildlife where there is present or future exchange of money, goods, or any valuable consideration.

CP at 53.

To prove first degree unlawful interference with fishing gear, the State had to prove beyond a reasonable doubt that Breitsprecher removed or released fish or shellfish from commercial fishing gear without the owner's permission, or he intentionally destroyed or interfered with commercial fishing gear. The trial court also instructed the jury that

> [a]t the time of the alleged offense, the [Washington State Fish and Wildlife] Commission had enacted a rule prohibiting any person from the use, control, or operation of any crab pot bearing a tag identifying the pot as belonging to another person, except: (a) An alternate operator designated on a primary license may possess and operate crab buoys and crab pots bearing the tags of the license holder, (b) Persons operating under a valid coastal gear recovery permit issued by [Fish and Wildlife] may possess crab pots or buoys bearing the tags of another license holder, provided the permittee adheres to provisions of the permit, (c) Persons operating under a valid coastal gear transport permit issued by [Fish and Wildlife] may possess crab pots or buoys bearing the tags issued by another state, provided the permittee adheres to provisions of the permit.

CP at 52.

The jury convicted Breitsprecher of third degree possession of stolen property, commercial fishing using unlawful gear, and first degree unlawful interference with fishing gear. CP at 98. The jury acquitted Breitsprecher of second degree theft.

Following the jury verdict, Breitsprecher filed a motion to arrest judgment based on insufficient evidence and the trial court's failure to give an accomplice liability instruction for the

commercial fishing using unlawful gear and unlawful interference charges. Breitsprecher never requested an accomplice liability jury instruction. The trial court denied the motion, entered judgment, and sentenced Breitsprecher. Breitsprecher appeals.

## ANALYSIS

Breitsprecher argues that there was insufficient evidence to support the convictions, the trial court erred by failing to give an accomplice liability instruction for the unlawful fishing gear and unlawful interference charges, and the court erred by denying his motion to dismiss and motion to arrest judgment. We reject Breitsprecher's arguments.

### I. SUFFICIENCY OF EVIDENCE

In a challenge to the sufficiency of the evidence, the inquiry is whether a "'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (italics omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The elements of the crime may be established by either direct or circumstantial evidence. *State v. Thompson,* 88 Wn.2d 13, 16, 558 P.2d 202 (1977). "In challenging the sufficiency of the evidence, the appellant admits the truth of the State's evidence and all inferences that can reasonably be drawn from it," giving equal weight to circumstantial and direct evidence. *State v. Hermann*, 138 Wn. App. 596, 602, 158 P.3d 96 (2007). "The State bears the burden of proving all the elements of the crime charged beyond a reasonable doubt." *Hermann*, 138 Wn. App. at 602. "[W]e must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Killingsworth,* 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

Because the trial court denied the motion to arrest judgment after the jury verdict, we utilize the same standard of review for both motions.

A. ACTUAL OR CONSTRUCTIVE POSSESSION OF STOLEN PROPERTY

Breitsprecher argues that insufficient evidence exists to prove that he had actual or constructive possession of the stolen crab pots. He argues that the State relied on the seizure of Breitsprecher's stack of pots at the Westport gear yard to allege that these pots were stolen, but claims that he did not personally stack the pots there, nor did he have exclusive access to the gear yard. Breitsprecher further argues that mere proximity of the stolen crab pots to his stack of pots found in the gear yard does not establish that he had actual or constructive dominion and control over the stolen pots, nor could he immediately and actually possess the pots even if they were found in his stack of pots. We disagree.

The jury heard testimony and considered exhibits from four different commercial fisherpersons who identified as their own, five of the crab pots that the Fish and Wildlife agents seized from Breitsprecher's stack of pots located at the Westport gear yard. All five crab pots seized and admitted at trial bore either Shearwater II pot tags or buoys.

Because the crab gear was heavy to store, Breitsprecher's gear was loaded by a fish processing company in a place designated just for him and his gear was labeled by buoys. The evidence demonstrated that Breitsprecher had possession of the area in the gear yard where the stolen crab pots were found by the Fish and Wildlife agents. The jury also heard and considered testimony by Kerzman that Breitsprecher instructed him when to remove crab pots from the water that belonged to other fishermen and how to modify the pots and buoys to make them appear to belong to Breitsprecher.

Viewing the evidence and all reasonable inferences in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that the State proved that Breitsprecher had actual or constructive possession of stolen property.

B. PROPERTY OF ANOTHER

Breitsprecher next argues that insufficient evidence existed to prove that the crab pots were the property of another. He claims that (1) the only evidence relied on by the State was Kerzman's testimony, (2) the State failed to introduce any evidence that Breitsprecher fished using unlawful gear or that he interfered with fishing gear, and (3) none of the State's witnesses confirmed that their crab pots had actually been stolen. We disagree.

Kerzman testified that Breitsprecher acted for commercial purposes as the captain, owner, and operator of the Shearwater II, Breitsprecher fished for commercial crab using gear in violation of Fish and Wildlife's statutes and regulations governing commercial crabbing, and Breitsprecher regularly directed him to pull crab pots that belonged to other commercial crab fishermen. Breitsprecher directed him to steal crab pots at sea, sort the contents, keep the harvestable crab, retain the stolen crab pots after modifying their appearance to make them appear to belong to Breitsprecher, and then return to Westport with the crab and the stolen crab pots.

Additional evidence showed that the stolen pots were found in Breitsprecher's gear pile at the Westport gear yard. Each commercial fisherperson identified his or her crab pots by their distinctive markings on the pots and testified that they did not sell, give, or otherwise permit Breitsprecher to possess or use their crab pots for commercial purposes. Further, Wilson and Winn specifically stated that they believed their crab pots had been stolen.

10

Viewing the evidence and all reasonable inferences in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that the State proved that the crab pots were the property of another.

## C. CRAB POTS WERE NOT ABANDONED

Breitsprecher next argues that the State presented insufficient evidence that the crab pots were not abandoned, and that the common law doctrine of finds applies. He claims that the crab pots he pulled onto his vessel were abandoned and were legally recovered by him during the crab season and that none of the State's witnesses identified the pots as being stolen rather than being lost at sea, being derelict gear, or being abandoned. Breitsprecher claims that the common law doctrine of finds applies in this case and that the salvage or recovery of property lost on navigable waters is governed by maritime law within the admiralty jurisdiction of the federal courts.

The State argues that (1) it presented sufficient evidence, (2) it had jurisdiction to charge Breitsprecher with possessing, using, and interfering with commercial fishing gear, (3) the trial court properly instructed the jury on the charges, and (4) Breitsprecher's claim that the common law doctrine of finds applies, fails. We agree with State.

The trial court properly instructed the jury to consider whether the crab pots were abandoned property under relevant law. However, the jury did not determine that the crab pots were abandoned property as Breitsprecher has asserted. We do not review the credibility of witnesses. *Killingsworth,* 166 Wn. App. at 287. As discussed above, there was a wealth of evidence in the record from which a rational trier of fact could find beyond a reasonable doubt that Breitsprecher had taken the property of another and that the crab pots were not abandoned property that he could lawfully keep.

"The law of finds is a common law principle granting title to the first party to discover and reduce to possession unknown or abandoned artifacts found in the sea." *In re Pers. Restraint of Tortorelli*, 149 Wn.2d 82, 92-93, 66 P.3d 606 (2003) (citing *Commonwealth v. Mar. Underwater Surveys, Inc.*, 403 Mass. 501, 531 N.E.2d 549 (1988)).

Breitsprecher fails to explain how the common law doctrine of finds applies here to trump the relevant state statutes and regulations governing commercial fishing in Washington. Additionally, the trial court did not instruct the jury on the law of finds, nor did Breitsprecher offer such an instruction. Because the trial court properly instructed the jury, Breitsprecher's claim that the law of finds applies, fails.

D. EVIDENCE THAT A CRIME WAS COMMITTED

Breitsprecher argues that there was insufficient evidence that any crime was committed and that Kerzman's statements should not have been admitted because there was no independent proof that Breitsprecher fished using unlawful gear or that he unlawfully interfered with fishing gear other than Kerzman's statements. We disagree.

"Corpus delicti means the 'body of the crime' and must be proved by evidence sufficient to support the inference that there has been a criminal act." *State v. Brockob,* 159 Wn.2d 311, 327, 150 P.3d 59 (2006) (quoting *State v. Aten,* 130 Wn.2d 640, 655, 927 P.2d 210 (1996)). Under the corpus delicti rule, "[a] *defendant's* incriminating statement alone is not sufficient to establish that a crime took place." *Brockob*, 159 Wn.2d at 328 (emphasis added) (footnote omitted). The corpus delicti rule arose from judicial distrust of confessions. *City of Bremerton v. Corbett,* 106 Wn.2d 569, 576, 723 P.2d 1135 (1986). Courts feared that confessions would be uncritically accepted by juries, even if there was evidence that the admissions were involuntary, coerced, or untruthful.

*Aten,* 130 Wn.2d at 656-57.  However, the corpus delicti rule applies to incriminating statements made by a defendant, not to statements made by an accomplice.  *Brockob,* 159 Wn.2d at 328.

Here, the State did not rely on any incriminating statements by Breitsprecher to support the convictions; rather, the State relied on the statements of Kerzman, an accomplice.  Thus, the corpus delicti rule does not apply here, contrary to Breitsprecher's arguments.  Further, Kerzman's testimony as an accomplice was properly admitted.  Kerzman testified that at Breitsprecher's direction, he stole the crab pots that were in Breitsprecher's possession on his vessel and in his gear storage stacks, and that the manner in which he [Kerzman] stole the pots violated the applicable Fish and Wildlife commercial fishing statutes and regulations.  Kerzman's testimony alone was sufficient to support the convictions.  However, in addition to Kerzman's statements, the State presented testimony by several commercial crab fisherpersons who testified that they did not sell, give, or permit Breitsprecher to possess their crab pots.  The State also presented physical evidence at trial by admitting five of the thirty-two stolen crab pots.  Viewing the evidence and all reasonable inferences in the light most favorable to the State, a rational jury could find beyond a reasonable doubt that sufficient evidence supports the convictions and that the law of finds does not apply here.  Thus, we hold that Breitsprecher's arguments fail.

E.  WASHINGTON'S OFFSHORE JURISDICTION

Breitsprecher next argues that the State presented insufficient evidence that the unlawful acts of possessing stolen property and using unlawful fishing gear occurred within 12 miles of the

shore of Washington state, citing to the United National Convention on the Law of the Sea, Article 3,[3] and 43 U.S.C. Section 1311. We disagree.

Breitsprecher's claim that the State did not prove jurisdiction related to the possession of stolen property conviction fails. The jury heard testimony that the stolen crab pots were seized from his stack of pots in the gear yard located in Washington. That testimony is sufficient to prove jurisdiction.

Breitsprecher's argument that the State did not prove jurisdiction for the commercial fishing using unlawful fishing gear conviction, also fails. As discussed above, the State was required to prove beyond a reasonable doubt as an element of the crime that Breitsprecher acted "for a commercial purpose and did take or fish for any fish or shellfish" in violation of Fish and Wildlife's statutes and regulations. CP at 50. The evidence presented by the State proved that Breitsprecher's act of fishing for commercial crab and taking shellfish included landing the catch in Westport when the Shearwater II came back into port. Kerzman's testimony established that Breitsprecher directed him to steal crab pots at sea, sort the contents, keep the harvestable crab, retain the stolen crab pots after modifying their appearance to make them appear to belong to Breitsprecher, and then return to Westport with the crab and the stolen crab pots.

Breitsprecher's argument that the State failed to prove jurisdiction for the unlawful interference with fishing gear conviction, also fails. The record establishes that Breitsprecher removed commercial crab unlawfully from other commercial fisherperson's gear—their crab pots. Breitsprecher did this without their permission and he intentionally destroyed or interfered with

---

[3] United National Convention on the Law of the Sea, sec. 2, art. 3 at 27, located at: https://www.un.org/Depts/los/convention_agreements/texts/unclos/unclos_e.pdf.

others' commercial fishing gear in violation of state statutes and regulations, thus, establishing a violation subject to the State's jurisdiction.

Viewing the evidence and all reasonable inferences in the light most favorable to the State, the State provided sufficient evidence that a rational trier of fact could find beyond a reasonable doubt that the alleged unlawful acts of possessing, using, and interfering occurred in the State of Washington under the State's offshore jurisdiction.

## II. ACCOMPLICE LIABILITY

Breitsprecher also argues that the trial court failed to instruct the jury on accomplice liability for the commercial fishing using unlawful gear and the unlawful interference with fishing gear charges, and thus, the court erred by denying his motion to arrest judgment. We hold that the trial court did not err because Breitsprecher failed to proffer an accomplice liability jury instruction.

An appellant who fails to raise an issue at trial, such as the trial court's failure to give a jury instruction, waives the issue on appeal unless he can show a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. O'Hara,* 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

Here, Breitsprecher did not proffer an accomplice liability jury instruction. He also does not argue why the failure to instruct the jury on accomplice liability constituted a manifest error affecting a constitutional right. Thus, this issue is waived.

To the extent that Breitsprecher argues that the evidence was insufficient to convict him absent an accomplice instruction, we have explained above that the evidence was sufficient to support Breitsprecher's conviction for possession of stolen property because Breitsprecher himself possessed the stolen crab pots. We have also explained above that Breitsprecher himself acted for

commercial purposes as the captain, owner, and operator of the Shearwater II, and he fished for commercial crab using gear in violation of Fish and Wildlife's statutes and regulations governing commercial crabbing. Finally, as described above, there was evidence that Breitsprecher himself intentionally interfered with others' commercial fishing gear, supporting his conviction for unlawful interference with fishing gear. As a result, the absence of an accomplice liability instruction does not undermine the sufficiency of the evidence supporting Breitsprecher's convictions.

## CONCLUSION

We hold that sufficient evidence supports Breitsprecher's convictions, his jury instruction claim fails, and the trial court did not err by denying his motion to dismiss and motion to arrest judgment. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MELNICK, P.J.

GLASGOW, J.

16